WILLIAM RAINEY HARPER COMMUNITY COLLEGE 512, Petitioner, v. HARPER COLLEGE ADJUNCT FACULTY ASSOCIATION, IEA/NEA, *et al.*, Respondents.

Fourth District   No. 4—94—0356

Argued May 24, 1995.—Opinion filed July 17, 1995.

Philip H. Gerner III (argued) and Karen J. Dimond, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for petitioner.

Robert P. Lyons (argued), of Illinois Education Association-NEA, of Chicago, and Mitchell Roth, of Illinois Education Association-NEA, of Springfield, for respondent Harper College Adjunct Faculty Association.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Alison E. O'Hara and Daniel N. Malato (argued), Assistant Attorneys General, of counsel), for respondent Illinois Educational Labor Relations Board.

William C. Kling, of Waubonsee Community College District No. 516, of Sugar Grove, for *amicus curiae*.

JUSTICE COOK delivered the opinion of the court:

In October 1991, Harper College Adjunct Faculty Association, IEA/NEA (Association), filed a representation petition, seeking to represent a unit of all part-time faculty teaching at least six hours per semester at William Rainey Harper Community College 512 (College). On June 7, 1993, the administrative law judge (ALJ) held that the individuals in the proposed unit were not short-term employees, that the unit was appropriate, and directed an election in the proposed unit. In October 1993, the Illinois Educational Labor Relations Board (Board) reversed the ALJ's decision and directed an election in a modified unit. (*Harper College*, 10 Pub. Employee Rep. (Ill.) par. 1002, No. 92—RC—0008—C (Illinois Educational Labor Relations Board October 26, 1993) (hereinafter 10 Pub. Employee Rep. (Ill.) par. 1002).) The College appeals, arguing the Board incorrectly interpreted section 2(q) of the Act defining "short-term employee."

The College has three categories of faculty: probationary employees, tenured faculty, and adjunct faculty. Probationary employees and tenured faculty are full-time faculty who teach at least 30 credit hours per academic year. The College's academic calendar is based on a 16-week semester system. During a semester, adjunct faculty can receive assignments ranging from a one-day seminar to more than one full-semester course. The College currently employs about 500 adjunct faculty, and there are about 100 new adjunct faculty each year. The College defines adjunct faculty in both a guidebook for adjunct faculty and in its policy manual as:

"[P]art-time faculty who have a workload of fewer than 24 contact hours or equivalent work-load per academic year, *i.e.*, fall and spring semesters.

* * *

3. The appointment places no obligation on the College for renewal or to specify cause for nonrenewal and does not create a

right to full-time employment." 10 Pub. Employee Rep. (Ill.) par. 1002, at IX-3.

Adjunct faculty are hired on the basis of need or student demand. When hired, they sign a document entitled " 'Terms and Conditions of Employment,' " which states " 'it is further understood that employment as an adjunct (temporary) faculty member shall not count towards completion of the probationary period for consideration of tenure.' " (10 Pub. Employee Rep. (Ill.) par. 1002, at IX-4.) After being hired, adjunct faculty also receive a form entitled " 'Salary Notification and Assignment,' " which states:

> "It is understood that the College reserves the right to cancel any or all of the above assignment(s) at the discretion of the College, making this statement of intent null and void, and that the foregoing provisions are subject to the Harper College Board policy." (10 Pub. Employee Rep. (Ill.) par. 1002, at IX-4.)

The College sometimes cancels an adjunct's assignment for various reasons, including insufficient student demand or assignment of a full-time faculty member to teach the course. Although adjunct faculty members can be reassigned if their initial assignment is cancelled, they have no right to reassignment. Adjunct faculty accrue no seniority at the College. No adjunct faculty member receives an assignment longer than one 16-week semester, nor do they receive any assurance of reassignment. However, some adjunct faculty have taught at the College for more than 10 years.

Adjunct faculty are compensated on a separate salary schedule based on the number of hours taught, level of education, and teaching experience. All adjunct faculty receive a College identification card valid for a full academic year and a parking sticker with no expiration date for the College faculty parking area. They are eligible for one day of sick or personal leave without loss of pay for each class section taught. They are also eligible for a tuition waiver beginning with their third semester of employment. Professional development courses are available, and the students and department chairs or coordinators evaluate each adjunct faculty member's teaching performance. 10 Pub. Employee Rep. (Ill.) par. 1002, at IX-4.

■■ The Illinois Educational Labor Relations Act (Act) (115 ILCS 5/2(q) (West 1992)) provides a mechanism by which "educational employees" may elect a representative for collective-bargaining purposes and may receive redress for violations of their employment rights. (115 ILCS 5/3 (West 1992).) An "educational employee" is defined as any individual employed full- or part-time by an educational employer. (115 ILCS 5/2(b) (West 1992).) "Short-term employees" cannot be "educational employees." However, an employee is not a "short-term employee" unless he or she is:

"[(1)] employed for less than 2 consecutive calendar quarters during a calendar year *and* [(2)] *** does not have a reasonable assurance that he or she will be rehired by the same employer for the same service in a subsequent calendar year." (Emphasis added.) (115 ILCS 5/2(q) (West 1992).)

There is another exclusion for "[P]art-time academic employees of community colleges," who are "those employees who provide less than 6 credit hours of instruction per academic semester." (115 ILCS 5/2(b) (West 1992).) Such part-time employees also cannot be "educational employees."

Generally, courts will accord deference to the interpretation placed on a statute by the agency charged with its administration and enforcement. However, an agency's statutory interpretation is not binding on a reviewing court, and will be rejected, if unreasonable or erroneous. *Press v. Code Enforcement Board of Appeals* (1992), 149 Ill. 2d 281, 285, 595 N.E.2d 1068, 1070.

■ An employee who fits within both prongs of the section 2(q) definition of "short-term employee" is not an "educational employee," and accordingly is not entitled to representation. The first prong questions whether the employee is "employed for less than two consecutive calendar quarters during a calendar year." Calendar quarters begin January 1, April 1, June 1, and October 1. A strict interpretation of the first prong would require the employee to work an entire six months beginning with one of the first three dates. (It is impossible to work six consecutive months in a single year if you begin October 1.) The College argued for a somewhat less restrictive interpretation, that the six months could begin on the first day of any month. Because, however, a standard educational year begins in late August or early September and ends in late May or early June, the Board pointed out that under either of those interpretations "nearly all faculty employed by educational employers would not be educational employees." (10 Pub. Employee Rep. (Ill.) par. 1002, at IX-6.) Even full-time educational employees could not get six full consecutive months in a single calendar year, unless perhaps they taught summer school. The Association suggested it should be sufficient if the employee was employed (1) during a portion, or (2) during a substantial portion, of two consecutive calendar quarters. The Board rejected the first suggestion because it would allow an employee who worked as little as two days a year to avoid categorization as a short-term employee, and rejected the second suggestion because it was vague, uncertain, and "contrary to the apparent legislative intent to require employment extending for a six-month period." The Board also rejected the ALJ's position that it was enough to work a full academic period which extended into two quarters.

Noting the uniqueness of the educational work calendar, a fact recognized in section 1 of the Act (115 ILCS 5/1 (West 1992)), the Board interpreted the term "calendar" in the first prong to mean "educational calendar." Accordingly, only those educational employees who work less than six consecutive months during an educational calendar year (*e.g.*, August to August) can be "short-term employees." The Board also held brief breaks between semesters did not constitute a break in service when calculating the six consecutive months. (10 Pub. Employee Rep. (Ill.) par. 1002, at IX-6 through IX-7.) Under the Board's interpretation, a faculty member who teaches one semester (16 weeks) a year might be a short-term employee, but a faculty member who teaches two semesters a year cannot be. We agree with the Board on this issue. The Board's interpretation of the first prong of section 2(q) of the Act is reasonable and advances the legislative intent by taking into account the uniqueness of the educational calendar year.

Even if adjunct faculty are not employed for at least six consecutive months during an educational calendar year, they may still be "educational" rather than "short-term" employees under the second prong if they "have a reasonable assurance that [they] will be rehired by the same employer for the same service in a subsequent calendar year." (115 ILCS 5/2(q) (West 1992).) The Board noted there could be a wide range of factors leading to a reasonable assurance of reemployment, but it focused primarily on whether an employee had actually been repeatedly rehired. The Board held any adjunct faculty member who had been hired by the same employer to perform the same service for at least one semester in each of three consecutive years has a reasonable assurance of being rehired for the same service in a later calendar year. 10 Pub. Employee Rep. (Ill.) par. 1002, at IX-7 through IX-8.

The Board's interpretation confuses "expectations" with "assurance." An "expectation" is an employee's subjective belief that he will be rehired. An "assurance" requires more than mere expectations. An "assurance" implies some affirmative act by the employer to demonstrate that it intends to rehire an employee, like a contract or oral representation. "Reasonable assurance is not quite a guarantee, but almost." (*City of Rushville*, 8 Pub. Employee Rep. (Ill.) par. 2042, at X-253, No. S—RC—92—66 (Illinois State Labor Relations Board August 25, 1992).) The Board admitted adjunct faculty members do not "receive any assurance that they will be given another assignment after their initial or current assignment ends." (10 Pub. Employee Rep. (Ill.) par. 1002, at IX-4.) The Board cites decisions from other jurisdictions which used the repeat rehiring test.

(*C.W. Post Center of Long Island University* (1972), 198 N.L.R.B. 453, 454, 80 L.R.R.M. 1738, 1740; *Community College v. Commonwealth* (1981), 60 Pa. Commw. 629, 636, 432 A.2d 637, 640, *aff'd per curiam* (1981), 496 Pa. 415, 437 A.2d 942.) However, those decisions are distinguishable because they used the repeat rehire test to determine whether an employee had a reasonable *expectation*, not assurance, of being rehired.

The evidence in this case clearly indicates the College did not assure the adjunct faculty members they would ever be rehired beyond their current assignment. On the contrary, the College by the previously quoted policy manual specifically informs adjunct faculty members they may never be rehired. Adjunct faculty members are also informed their assignment may be cancelled at any time for any reason and that they have no right to reassignment. In addition, adjunct faculty members do not receive any assignments longer than one 16-week semester.

The Board held these disclaimers did not negate "the reasonable assurance of reemployment in a later calendar year for those adjunct faculty who have been repeatedly rehired. An employee may reasonably expect to be rehired based on actual practice despite an employer's disclaimer of an obligation to rehire." (10 Pub. Employee Rep. (Ill.) par. 1002, at IX-8.) The Board relied upon *University of San Francisco* (1982), 265 N.L.R.B. 1221, 1223, 112 L.R.R.M. 1113, 1114, where the National Labor Relations Board (NLRB) stated:

> "[T]heir contracts merely make clear that the appointment to a teaching position in one year does not establish a *right* to reappointment in successive years. Such a disclaimer of 'tenure' does not, without more, demonstrate temporary status. The key question which remains unanswered is whether, apart from the fact that the Employer is not obligated to reappoint such employees, it, in fact, does so." (Emphasis in original.)

However, the question in *San Francisco* was again whether the employee could reasonably expect to be rehired, not whether the employer had assured the employee that he or she would be rehired. We do not mean to say a contractual disclaimer is a *per se* bar to having a reasonable assurance. If the employer, for example, made representations to the employee that conflicted with the disclaimers, the employee might still have a reasonable assurance of reemployment. However, there is no such evidence in this case.

The Board points to other evidence in the record to show adjunct faculty members had a reasonable assurance of reemployment, including the tuition waiver, parking sticker, identification card, professional development courses, and performance evaluations. In

addition, the turnover rate of adjunct faculty was only 20%. However, there is no evidence that the College *assured* adjunct faculty members that they would be rehired. A tuition waiver valid in the third year of employment does not assure an adjunct faculty member that he or she will ever be rehired. Instead, it serves as a reward if any faculty member is actually hired for three years. The parking sticker and identification card do not contain any promises by the College to rehire or to negate the disclaimers. The Board reasoned there would be no need for performance evaluations if the College did not intend to rehire an adjunct faculty member. Although an evaluation may determine whether someone could be rehired, the evaluation provides no assurance the individual will be rehired.

In addition, the Board has collapsed the two tests set out in section 2(q) into one test. Section 2(q) imposes one test based on length of employment (the first prong) and a separate test based upon the relationship between the employer and employee (the second prong). However, the Board's decision replaces the employer-employee relationship test in the second prong with yet another test based upon length of employment. It is inconsistent with the language of section 2(q) to allow an adjunct faculty member who cannot meet the length of employment test in the first prong (six consecutive months of employment), to qualify for representation under the second test on the basis of less than six consecutive months of employment.

Furthermore, the Board's decision conflicts with section 2(b) of the Act, which excludes "part-time academic employees" who provide "less than 6 credit hours of instruction per academic semester." (115 ILCS 5/2(b) (West 1992).) The Board's interpretation of the second prong of section 2(q) of the Act permits an adjunct faculty member to teach only six hours in one semester in each of three consecutive years and thereby qualify as an "educational employee." Apparently an adjunct faculty member who taught six hours in the fall semester but did not teach during the spring semester would be eligible for union representation in the fall semester but ineligible during the spring semester. This interpretation ignores the plain language of section 2(b) of the Act, which requires six hours of instruction per "academic semester," which clearly means every semester the College is open. The Board's interpretation would also lead to uncertainty and confusion with employees routinely entering and leaving the bargaining unit.

It does appear that a member of the adjunct faculty who teaches six hours each and every semester, even without assurance of reemployment, is not a "short-term employee" and is entitled to rep-

resentation. We reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

KNECHT, P.J., and LUND, J., concur.