30 June 2000

NO. 4-99-0776

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE CITY OF TUSCOLA,

Petitioner,

v.

THE ILLINOIS STATE LABOR RELATIONS BOARD and THE POLICEMEN'S BENEVOLENT LABOR COMMITTEE,

Respondents.

)

)

)

)

)

)

)

Administrative Review of The Illinois State Labor Relations Board

No. SRC9964

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In June 1999, the Illinois State Labor Relations Board (Public Labor Board) granted a representation and certification petition filed by the Policemen's Benevolent Labor Committee (Union), seeking to represent a bargaining unit of all full-time and part-time police officers of the City of Tuscola (City).  
City of Tuscola
, 15 Pub. Employee Rep. (Ill.) par. 2034, No. S-

RC-99-64 (Illinois State Labor Relations Board, June 29, 1999). The City petitions for administrative review, arguing that the Public Labor Board does not have jurisdiction over the City.  We agree and reverse.

I. BACKGROUND

In January 1999, the Union filed its representation and certification petition with the Public Labor Board, pursuant to the Illinois Public Labor Relations Act (Public Labor Act) (5 ILCS 315/1 
et
 
seq
. (West 1998)) and its rules and regulations (80 Ill. Adm. Code §§1200.10 through 1230.220 (1997)).  The Union sought to represent a bargaining unit of all full-time and part-

time sworn police officers of the City below the rank of chief of police.

In March 1999, the City filed a motion to dismiss the Union's petition, asserting that the Public Labor Board lacks jurisdiction because the City is a municipality with fewer than 35 employees, the threshold jurisdictional requirement under section 20(b) of the Public Labor Act.  5 ILCS 315/20(b) (West 1998).  Later that month, an administrative law judge (ALJ) conducted a hearing on the City's motion to determine whether various City employees were "employees" or "short-term employees" under the Public Labor Act (5 ILCS 315/3(n), (q) (West 1998)).  "Short-term employees" are not counted as "employees" under section 20(b) of the Public Labor Act.  5 ILCS 315/20(b) (West 1998).

At the hearing, city administrator Drew Hoel and councilpersons Phyllis Truitt and Boyd Henderson testified for the City.  A summary of their testimony pertinent to this appeal follows.

The City operates a swimming pool from Memorial Day to Labor Day each year.  The City employs part-time lifeguards, pool maintenance workers, concession workers, cashiers, and workers identified only as "basket workers" for the summer season.  Most pool employees are students who work part-time hours because of their other jobs and commitments.  Pool employees are paid on an hourly basis.

Each spring, the City solicits applicants for pool positions by placing an ad in the local newspaper.  The City requires rehires and new applicants to follow the same applica

tion procedure.  Interviews are not required for new applicants or rehires.  

A committee of the city council makes all hiring decisions.  After the application deadline, the committee meets with the pool manager to review the applications and considers (1) whether the applicant lives in town; (2) whether the appli

cant has lifeguard certification; and (3) regarding an applicant who had previously worked at the pool, the pool manager's recom

mendation.  The pool manager tells the committee whether the applicant (1) was a good worker, (2) was reliable, and (3) had a good attitude. 

Each witness testified that pool employees were not told that they would automatically be rehired in subsequent years.  Members of the hiring committee neither made commitments nor took affirmative acts to indicate to pool employees that they would be rehired in the future.  Although some former pool employees were not rehired, most were rehired if they reapplied.  Some worked at the pool for four or five consecutive summers.

The Union presented no evidence that contradicted this testimony, and no pool employees testified.  

In May 1999, the ALJ issued his recommended decision and order.  The ALJ found, in pertinent part, that 21 pool employees had a reasonable assurance of being rehired and there

fore were not short-term employees, as defined in section 3(q) of the Public Labor Act.  5 ILCS 315/3(q) (West 1998).  Thus, the ALJ concluded that because the City employs more than 35 employ

ees, the Public Labor Board had jurisdiction over the City. 

In June 1999, the Public Labor Board adopted the ALJ's findings of fact and conclusions of law.  It then granted the Union's petition and directed that a representation election be held.  This appeal followed.

II. ANALYSIS

A. Standard of Review

The Administrative Review Law (735 ILCS 5/3-101 
et
 
seq
. (West 1998)) governs judicial review of the Public Labor Board's decision and extends to all questions of law and fact presented by the record.  5 ILCS 315/9(i) (West 1998); 
Northwest Mosquito Abatement District v. Illinois State Labor Relations Board
, 303 Ill. App. 3d 735, 741, 708 N.E.2d 548, 552 (1999).  We will reverse the Public Labor Board's decision only if we conclude that it was contrary to the manifest weight of the evidence.  
Under the manifest weight standard, the Public Labor Board's findings of fact are 
prima
 
facie
 true and correct.  The decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident.  
Northwest Mosquito
, 303 Ill. App. 3d at 741, 708 N.E.2d at 553.

The Public Labor Board's conclusions of law, however, are not entitled to the same deference, and we review them 
de
 
novo
.  When mixed questions of law and fact are involved, the Public Labor Board's resolution of such questions will be upheld if "reasonable, consistent with labor law[,] and based on find

ings supported by substantial evidence."  
Northwest Mosquito
, 303 Ill. App. 3d at 742, 708 N.E.2d at 553.  "Generally, courts will accord deference to the interpretation placed on a statute by the agency charged with its administration and enforcement.  However, an agency's statutory interpretation is not binding on a review

ing court, and will be rejected, if unreasonable or erroneous."  
William Rainey Harper Community College 512 v. Harper College Adjunct Faculty Ass'n
, 273 Ill. App. 3d 648, 651, 653 N.E.2d 411, 414 (1995)
, citing 
Press v. Code Enforcement Board of Appeals
, 149 Ill. 2d 281, 285, 595 N.E.2d 1068, 1070 (1992).  This case presents a mixed question of law and fact.

B. The Status of the City's Pool Employees

The City contends that its pool employees are "short-

term employees," as that term is defined in section 3(q) of the Public Labor Act.  5 ILCS 315/3(q) (West 1998).  We agree.  

Section 3(q) of the Public Labor Act defines a short-

term employee as "an employee who is employed for less than 2 consecutive calendar quarters during a calendar year and 
who
 
does not
 
have
 
a
 
reasonable
 
assurance
 
that
 
he
 
or
 
she
 
will
 
be
 
rehired
 
by the
 
same
 
employer
 
for
 
the
 
same
 
service
 
in
 
a
 
subsequent
 
calendar year
."  (Emphasis added.)  5 ILCS 315/3(q) (West 1998).  The parties do not dispute that pool employees are employed for less than two consecutive calendar quarters.  The essence of the parties' dispute is whether the Public Labor Board correctly determined that the pool employees are not short-term employees because they have a reasonable assurance that they will be rehired in subsequent summers.  The City maintains that pool employees receive no such assurance.

1. 
The
 
Precedential
 
Value
 
of
 
the
 Harper
 College 
Case

In 
Harper College
, this court was called upon to interpret section 2(q) of the Illinois Educational Labor Relations Act (Educational Labor Act) (115 ILCS 5/2(q) (West 1998)), which is identical to section 3(q) of the Public Labor Act.  There
, the Illinois Educational Labor Relations Board (Educa

tional Labor Board) concluded that adjunct faculty members were "short-term employees" of Harper Community College (College) pursuant to section 2(q) of the Educational Labor Act.  115 ILCS 5/2(q) (West 1992).  According to the Educational Labor Board, if the College hired an adjunct faculty member to perform the same job for at least one semester in each of three consecutive years, he or she had a reasonable assurance of rehire for the same service in a later calendar year.  
Harper College
, 273 Ill. App. 3d at 652, 653 N.E.2d at 415.  This court disagreed with the Educational Labor Board and wrote the following:

"The Board's interpretation confuses 'expectations' with 'assurance.'  An 'expec

tation' is an employee's subjective belief that he will be rehired.  An 'assurance' requires more than mere expectations.  An 'assurance' implies some affirmative act by the employer to demonstrate that it intends to rehire an employee, like a contract or oral representation.  'Reasonable assurance is not quite a guarantee, but almost.'" 
Harper College
, 273 Ill. App. 3d at 652, 653 N.E.2d at 415, quoting 
City of Rushville
, 8 Pub. Employee Rep. (Ill.) par. 2042, at X-

253, No. S-RC-92-66 (Illinois State Labor Relations Board August 25, 1992).

The evidence in 
Harper College
 indicated that the College did not assure adjunct faculty members that they would ever be rehired.  Moreover, the College informed adjunct faculty members that (1) their assignments could be canceled at any time, and (2) they had no right to reassignment.  The Educational Labor Board argued that these disclaimers did not negate the existence of a reasonable assurance of reemployment based on "actual practice."  
Harper College
, 273 Ill. App. 3d at 653, 653 N.E.2d at 415. 

We noted in 
Harper College
 that a contractual dis

claimer is not a 
per
 
se
 bar to finding a reasonable assurance of rehire.  Despite disclaimers, an employer could, through oral or other representations, provide an employee with a reasonable assurance that he or she would be rehired.  
Harper College
, 273 Ill. App. 3d at 653, 653 N.E.2d at 415.  However, we concluded that the record contained no evidence that the College had ever offered adjunct faculty 
any
 assurance that they would be rehired in the future. 

The Public Labor Board questions the precedential value of 
Harper College
 because the Educational Labor Board has not used the same five-part test that the Public Labor Board uses to determine the existence of a "reasonable assurance."  For the reasons that follow, we conclude that 
Harper College
 applies. 

The General Assembly enacted the Educational Labor Act and the Public Labor Act during the same legislative session, and "[t]he two acts together were an attempt to provide 'a comprehen

sive regulatory scheme for public sector bargaining in Illi

nois.'"  
Board of Education of Community School District No. 1 v. Compton
, 123 Ill. 2d 216, 221, 526 N.E.2d 149, 152 (1988), quoting 
Chicago Board of Education v. Chicago Teachers Union
, 142 Ill. App. 3d 527, 530, 491 N.E.2d 1259, 1261 (1986).  Illinois courts frequently look to cases decided under the Educational Labor Act when addressing issues under the Public Labor Act and vice versa.  See, 
e.g.
, 
Chicago Teachers Union v. Illinois Educational Labor Relations Board
, 296 Ill. App. 3d 785, 791-92, 695 N.E.2d 1332, 1336-37 (1998) (for guidance in interpreting section 2(
o
) of Educational Labor Act, the court turned to the identical provision, section 3(j), of the Public Labor Act); 
County of Peoria v. Illinois State Labor Relations Board
, 305 Ill. App. 3d 827, 834, 713 N.E.2d 745, 749-50 (1999) (citing 
Du Page Area Vocational Educational Authority v. Illinois Educational Labor Relations Board
, 167 Ill. App. 3d 927, 937, 522 N.E.2d 292, 298 (1988), as precedent for considering certain factors when determining a "community of interest").  Section 15.1 of the Public Labor Act (5 ILCS 315/15.1 (West 1998)), directing the Public Labor Board to consider the decisions of other labor boards as persuasive authority or precedent or both, suggests that the legislature intended uniform interpretation of these two acts.  It logically follows that courts too should look to decisions under either act when faced with a question of statutory interpretation.  The two acts promote similar goals, deal with similar legal concepts and terms, and attempt to provide a "comprehensive regulatory scheme."

Given the statutory framework discussed above, we see no reason to ignore the 
Harper College
 precedent for interpreting section 3(q) of the Public Labor Act
.  When the legislature uses identical language to define identical terms, absent evidence of a contrary intent, the only logical conclusion to be drawn is that the legislature intended that the two sections have the same meaning and be interpreted identically.
   

An administrative agency's interpretation of a statute is not binding on this court, and we will reject it when it is erroneous.  
Wapella Education Ass'n v. Illinois Educational Labor Relations Board
, 177 Ill. App. 3d 153, 161, 531 N.E.2d 1371, 1376 (1988).  To the extent that the Public Labor Board's five-part test under section 3(q) of the Public Labor Act allows for a finding of "reasonable assurance" based on an employee's subjec

tive expectations absent any affirmative act on the employer's part, that test is contrary to law, and we reject it.

2. Northwest Mosquito 
and
 
the
 
Board's
 
Five-Part
 
Test

The Board urges us to follow 
Northwest Mosquito
, in which the First District Appellate Court used the Board's five-

part test to determine that summer employees of the Northwest Mosquito Abatement District (District) had a reasonable assurance of rehire.  The five-part test requires the following factors be considered:  (1) whether any preference is given to those who have worked for the governing body in previous years; (2) whether the position requires a special license or certificate; (3) whether the individuals must reapply each year; (4) whether the employer has made any assurance or indicated that it will rehire the individual; and (5) the number of individuals rehired from year to year.  
Mosquito
, 303 Ill. App. 3d at 743, 708 N.E.2d at 554.  

The evidence in 
Mosquito
 showed that the summer employ

ees were told that (1) if they did a good job they might be rehired, and (2) the reapplication process would be far simpler for them than it was for new hires.  In December of each year, the District mailed applications to 85% of its prior summer employees to solicit applications for the next summer season.  This mailing occurred months before new applicants could apply and regardless of whether the former employees requested applica

tions for summer work.  The interview requirement was waived for applicants who had worked for the District the previous year.  Rehires were paid more than new hires, and the job required a special license.  
Northwest Mosquito
, 303 Ill. App. 3d at 744-45, 708 N.E.2d at 555.  Analyzing these facts under the Board's five-

part test, the court concluded that the District's summer employ

ees had a reasonable assurance of being rehired.

As we already indicated, to the extent that the court in 
Northwest Mosquito
 based its decision on the expectations of the District's employees rather than the conduct of the District, we disagree with its analysis.  More important, however, 
North

west Mosquito
 is distinguishable from the case at bar on its facts.  In 
Northwest Mosquito
, the District took steps to assure summer employees that they would be rehired in subsequent years.  The record contains no such evidence in the case at bar.

3. 
The
 
Evidence

In the May 1999 recommended decision and order, which the Public Labor Board adopted, the ALJ wrote: "[t]he record establishes that the summer workers at the pool are aware of the City's policy that they will be rehired to work at the pool if they apply as long as they had a good attitude and did a good job."  
City of Tuscola
, 15 Pub. Employee Rep. (Ill.) par. 2034, No. S-RC-99-64, at X-175 (Illinois State Labor Relations Board, May 21, 1999 (ALJ's recommended decision and order)).  This finding is contrary to the manifest weight of the evidence.  

The record contains no evidence that the City had any policy favoring former summer pool workers over other applicants.  Pool employees had to go through the application process each year.  No application requirements were waived, their applica

tions were not solicited in advance, and they received the same pay as new hires.  Most significantly, the record contains no evidence that any City employee ever made any statement or took any action that would provide pool employees with a reasonable assurance that they would be rehired.

The Public Labor Board argues that the City's conduct--

that is, its rehiring of nearly every returning pool employee--

"effectively told" the employees that they had a reasonable assurance of rehire.  The Public Labor Board urges us to hold that it may rely exclusively on the percentage of employees rehired each year to find that a "reasonable assurance of rehire" exists, even in the absence of any actual assurance to rehire the employees in question.  We decline to adopt a test that so clearly departs from the statutory language.    

As this court explained in 
Harper College
, the statu

tory definition of short-term employee gives rise to a two-part test.  The first prong is based on the length of time an employee works for the employer--that is, less than two consecutive calendar quarters.  The second prong, addressing whether the employee has a reasonable assurance of rehire, focuses on the relationship between the employer and the employee.  In 
Harper College
, we concluded that finding a "reasonable assurance" based on successive rehiring essentially collapses the two prongs of section 2(q) of the Educational Labor Act (or section 3(q) of the Public Labor Act) into one.  
Harper College
, 273 Ill. App. 3d at 654, 653 N.E.2d at 416.  Likewise, to base a finding of "reason

able assurance" on the number of employees rehired in successive years would negate any consideration of the nature of the employer-employee relationship and base the determination of short-term employment solely on the length of time the employee works for the employer.

To reiterate, we hold that a "reasonable assurance of rehire" requires some evidence that the employer made some representation (of whatever nature) that the employee could reasonably construe as an "assurance" that he or she would be rehired at a later date.  The Public Labor Board's finding that such assurance existed in this case was contrary to the manifest weight of the evidence.  

III. CONCLUSION

For the reasons stated, we reverse the Public Labor Board's decision.

Reversed.

COOK, P.J., and KNECHT, J., concur.