In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3132

ELMER RITTER,

Plaintiff-Appellant,

v.

HILL 'N DALE FARM, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 98 C 2895--Matthew F. Kennelly, Judge.

Argued October 3, 2000--Decided November 9, 2000

Before FLAUM, Chief Judge, and COFFEY and
ROVNER, Circuit Judges.

FLAUM, Chief Judge.  Elmer Ritter, a
field maintenance worker at Hill 'N Dale
Farm (HND), filed suit under the Age
Discrimination in Employment Act (ADEA),
29 U.S.C. sec.sec. 621-634, against
HND/1 after his employment ended/2
when he was 71. In granting summary
judgment for HND, the district court
found that Ritter narrowly made out a
prima facie case of discrimination, held
that Ritter had failed to demonstrate
that HND's proffered reason for ending
his employment--that an economic downturn
made his position unnecessary--was
pretextual, and rejected Ritter's
contention that HND's subsequent failure
to rehire him constituted discrimination.
On appeal, Ritter challenges these
holdings. We affirm.

I.  Background
   Ritter began working at HND in spring
1988 at the age of 63. Farm Manager Joe
Carper hired Ritter and served as his
direct supervisor. Ritter's primary duty
as a field maintenance employee was to
mow the farm's pastures.

In fall 1989, Ritter quit after a dispute with a business manager, but he was rehired in spring 1990 after the manager was replaced. Because HND did not need pastures mowed in the winter, Carper transferred Ritter in fall 1990 to a night watch position for the winter (November through March). As a night watchman, Ritter's main duties were to feed and water the horses, and to monitor their general condition. From 1991 to 1994, Ritter served as a night watchman during the winter, while returning to his field maintenance position for the remainder of the year.

Ritter's job performance was mixed during the early 1990s. Carper was satisfied with Ritter's performance as a field maintenance worker and he granted Ritter pay increases in 1991, 1992, and 1993. However, Ritter missed work numerous times during the winter; he was absent 22 days in the winter of 1990-1991, 8 days in 1991-1992, and 17 days in 1992-1993. Ritter notes that his absences were largely due to the fact that he lived nearly 60 miles away from HND and often had problems commuting in the winter. HND asserts that when Ritter was absent they would have to pay another worker overtime to cover his shift and that his absences could endanger the horses if no one could be found to cover his shift.

In January 1994, after Ritter had missed 29 of the previous 35 days of work, Carper decided that he could no longer employ Ritter in the winter. Carper did not fire Ritter, but instead offered him a seasonal field maintenance position from March to November. Ritter accepted the offer and worked at HND from March to November in both 1994 and 1995. There is a dispute over the exact terms of Ritter's seasonal employment. HND claims that Ritter's employment ended in November of each year and that they chose to rehire him the next March. Ritter, noting that his return to work in March 1995 did not involve an employment application or any additional paperwork, asserts that he was guaranteed seasonal employment each year.

In fall 1995, HND's owner, Richard Duchossois, informed Carper that he was unloading several horses at HND due to

economic difficulties in the local horse industry and that he wanted to reduce expenses at the farm. In response, Carper, realizing that fewer horses required less pasture land, decided to eliminate Ritter's seasonal field mainte nance position. When Ritter showed up on March 15, 1996, looking for work, Carper informed him that his position had been eliminated. HND did not replace Ritter; instead it divided his seasonal mowing responsibilities among Carper and four full time, year-round HND employees between the ages of 20 and 37 and who were paid $6.50 to $7.50 per hour as opposed to the $9.35 that Ritter had earned.

After Ritter was not rehired to his field maintenance position, HND filled two positions in which Ritter claims to have been interested. At three different times during 1996, HND advertised for and filled the night watch position. Ritter applied for the position twice, but Carper hired individuals who were younger and paid less. In September 1996, HND hired a new mechanic. Ritter had performed some mechanic's duties for one week in 1991 but since then he had not expressed interest in the position.

In January 1997, Ritter filed a charge of discrimination with the EEOC, alleging that HND violated the ADEA by terminating him in March 1996. The EEOC dismissed the charge, but issued a right to sue letter in February 1998. In May 1998, Ritter filed this suit, alleging discrimination on the basis of age. In support of his claim, Ritter alleged that a number of similarly situated younger employees were not discharged in March 1996, and that younger applicants had been selected for the night watch and mechanic positions, despite the fact that Ritter was interested in and qualified for those positions. Finally, Ritter alleged that at some time prior to October 1995, Carper once remarked that Ritter was "getting critical in his old age."

The district court granted summary judgment to HND. The court first noted that Carper's alleged remark did not amount to direct evidence of discrimination because even Ritter admits he took the statement as a joke, and there was no evidence that the statement was related to the decision to terminate

Ritter. The court next found that Ritter could "probably eke out a prima facie case" under the indirect framework, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), though the court questioned whether Ritter could show that similarly situated employees were treated more favorably. Finally, the court held that HND had demonstrated that it terminated Ritter for a legitimate, nondiscriminatory reason--the downturn in the horse industry--and that Ritter had not offered any evidence tending to show that HND's reason was pretextual. As for HND's failure to rehire Ritter as a mechanic or night watch person, the district court noted that Ritter had not applied for the mechanic position, and found that his past pattern of absenteeism in the winter made him unqualified for either of the year-round positions.

II.  Discussion

As a preliminary matter, we address the parties' dispute over the exact nature of Ritter's employment. HND claims that as a seasonal employee Ritter was fired in November of each year and then rehired in March of the next year. Therefore, HND claims they actually rehired Ritter at the ages of 69 and 70 and that the March 1996 employment action was simply a failure to rehire rather than a termination. Ritter, however, argues that he was always an employee of HND and he was guaranteed seasonal work every year. Therefore, he asserts that he was terminated in March 1996.

HND's view of Ritter's employment situation appears to be correct. The handful of Illinois cases involving the status of seasonal employees under state law all refer to those employees as being rehired at the beginning of the season. See e.g., City of Tuscola v. Illinois State Labor Relations Bd., 732 N.E.2d 784 (Ill. App. Ct. 2000); Northwest Mosquito Abatement Dist. v. Illinois State Labor Relations Bd., 708 N.E.2d 548 (Ill. App. Ct. 1999); Webb v. County of Cook, 656 N.E.2d 85, 88 (Ill. App. Ct. 1995); Motsch v. Pine Roofing Co., Inc., 533 N.E.2d 1, 5 (Ill. App. Ct. 1988).  Those cases accepted that the seasonal employees were terminated at the end of the season. The relevant inquiry for determining the seasonal employees'

status under various state laws was whether the employee had a "reasonable assurance" of being rehired the next year. City of Tuscola, 732 N.E.2d at 736-37; Northwest Mosquito, 708 N.E.2d at 554. We decline to decide whether Ritter had a reasonable assurance of being rehired for two reasons. First, there is not a sufficient factual basis in the record upon which to make such a decision. Second, given that we agree with the district court that Ritter has failed to demonstrate that HND was motivated by discrimination in its actions, it is unnecessary to decide the exact nature of Ritter's employment.

On appeal, Ritter argues that he established a prima facie case of discrimination and pretext in regards to both the March 1996 employment action and HND's failure to rehire him as a mechanic or night watch person. Specifically, Ritter asserts that he met HND's expectations as a field maintenance worker, that his absences during the winter were due to bad weather and his long commute, and that younger individuals took over his duties and were hired to the mechanic and night watch positions.

Ritter has set forth a prima facie case of discrimination with regards to the March 1996 employment action. The parties do not dispute that the first three elements of the prima facie case are met because Ritter was over 40, was meeting HND's legitimate expectations in regards to his performance of the field maintenance position, and suffered an adverse employment action. See Ransom v. CSC Consulting, Inc., 217 F.3d 467, 470 (7th Cir. 2000).

HND, however, disputes whether Ritter has established the fourth prong of the prima facie case. HND argues that this case involves a reduction in force (RIF) because HND eliminated Ritter's position rather than replacing him. HND notes that in RIF cases the fourth prong of the prima facie case has been described as requiring a showing that "similarly situated, substantially younger employees were treated more favorably." Pitasi v. Gartner Group, Inc., 184 F.3d 709, 716 (7th Cir. 1999); Jackson v. E.J. Brach Corp., 176 F.3d 971, 983 (7th Cir. 1999). HND argues that Ritter's showing fails

because all the other younger employees Ritter identified as being treated more favorably were not similarly situated because they were year-round, as opposed to seasonal, employees.

HND's argument is incorrect, however, because Ritter's case is not a true RIF--only one position (Ritter's) waseliminated and the duties of that position were simply absorbed by other employees. Ritter's case, therefore, constitutes a "mini-RIF," see Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 693 (7th Cir. 2000); Bellaver v. Quanex Corp., 200 F.3d 485, 495 (7th Cir. 2000), or "fungibility" situation, see Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1012 (7th Cir. 2000); Miller v. Borden, Inc., 168 F.3d 308, 313 (7th Cir. 1999). In these cases, the fourth prong of the prima facie case is met by showing simply that the plaintiff was "constructively replaced," in other words that his responsibilities were absorbed by employees not in the protected class. See Paluck, 221 F.3d at 1012; Michas, 209 F.3d at 693; Bellaver, 200 F.3d at 495. It is not disputed that Ritter's mowing responsibilities were taken over by four employees who were all under 40 years of age, and therefore Ritter has demonstrated a prima facie case.

Because Ritter established a prima facie case, the burden of production shifted to HND to present a legitimate, nondiscriminatory reason for its actions. See Jackson, 176 F.3d at 983. HND explained that the elimination of Ritter's position was the direct result of an economic downturn in the horse industry. The downturn required cutbacks in expenses, a reduction in the number of horses, and a corresponding reduction in the amount of pasture land. Ritter's position was a logical one to cut because he was the lone seasonal employee, his frequent absences demonstrated that he could not meet HND's legitimate expectations in the winter, and there were now fewer pastures to mow. HND met its burden of production.

Ritter's claim fails because he has not demonstrated that HND's proffered explanation is merely pretextual--in other words, that HND has offered a phony reason for the employment action. See Baron v. City of Highland Park, 195 F.3d

333, 341 (7th Cir. 1999); Jackson, 176 F.3d at 983. Pretext is not shown merely by demonstrating that HND erred or exercised poor business judgment; instead Ritter must establish that HND did not believe the reasons it gave for eliminating his position. See Pitasi, 184 F.3d at 718.

In attempting to show pretext, Ritter acknowledges that an economic downturn required cutbacks at the farm. Ritter, however, disputes HND's reasons for selecting his position to eliminate and contends that HND actually targeted his position because of his age. In support, Ritter asserts that other duties could have been shifted to him and that other younger employees could have been fired; that Carper's statement about Ritter "getting critical in [his] old age" demonstrates his discriminatory intent; and that two 59-year-old employees were fired around the same time as Ritter was.

Ritter did not establish pretext. Ritter's assertion that HND could have dismissed other employees and shifted new responsibilities to him merely challenges HND's business judgment. This court has consistently emphasized that it will not "sit as a super personnel department to review an employer's business decision." Ransom, 217 F.3d at 471; Baron, 195 F.3d at 341. Ritter's assertions do not show that HND is lying about its reasons for its actions.

Carper's statement about Ritter "getting critical in [his] old age" also does not show pretext. Although remarks can occasionally help to establish pretext, see Hoffman v. MCA, Inc., 144 F.3d 1117, 1124 (7th Cir. 1998), pretext is not demonstrated by isolated statements unrelated to the employment decision at issue. See id.; see also Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1089 (7th Cir. 2000). In this case, Carper only made one comment directed at Ritter's age, the comment was made at least six months before Ritter's position was eliminated, and even Ritter admits that he took it as a joke.

The fact that two 59-year-old employees were fired around the same time as Ritter also does not demonstrate pretext. First, Ritter has presented no evidence as to

the two employees' qualifications or the circumstances surrounding their termination, and therefore it is not clear that they were similarly situated to Ritter. See Swanson v. Leggett & Platt, Inc., 154 F.3d 730, 734 (7th Cir. 1998). Second, Ritter obtained the names of the two 59-year-olds who were terminated from a list of 41 employees terminated by HND between 1995 and 1997. The remaining 39 employees on the list were all under the age of 40, a fact which undermines Ritter's claim that HND targeted older people to terminate.

Finally, we note that two additional facts suggest that no discriminatory motive was involved here. First, Ritter was hired originally at the age of 63 and was rehired at the age of 65. From the fact that HND hired Ritter when he was already 23 years into the protected class, the court can infer that his later firing was not due to his age. See Rand v. CF Indus., Inc., 42 F.3d 1139, 1147 (7th Cir. 1994) ("It seems rather suspect to claim that the company that hired [plaintiff] at age 47 'had suddenly developed an aversion to older people' two years later."). A similar inference of nondiscrimination can also be made from the fact that Ritter was hired and fired by the same individual, Carper. See Johnson v. Zema Sys. Corp., 170 F.3d 734, 744-45 (7th Cir. 1999); EEOC v. Our Lady of the Resurrection Med. Ctr., 77 F.3d 145, 152 (7th Cir. 1996); Rand, 42 F.3d at 1147. Although these facts do not foreclose a finding of discrimination, see Johnson, 170 F.3d at 745, they do create an inference of nondiscrimination.

As to Ritter's claims of discrimination based on HND's failure to rehire him to other positions, such claims cannot be raised because they were never presented in his charge of discrimination with the EEOC. Ritter's charge stated only that he was discharged and that he believed he had been discriminated against on the basis of his age. Although this court reads charges of discrimination liberally in order to allow a plaintiff to bring any claim of discrimination that is reasonably related to the allegations of the charge, see Rush v. McDonald's Corp., 966 F.2d 1104, 1110-12 (7th Cir. 1992), the court has also required that charges filed with the EEOC include both

discriminatory termination and failure-to-rehire claims. See Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 920 (7th Cir. 2000). Because Ritter did not mention a failure-to-rehire claim in his EEOC charge, this claim is not cognizable.

Even if the failure-to-rehire claim was cognizable, it would fail on the merits because Ritter cannot establish a prima facie case. While Ritter has shown that he is a member of the protected class, that he was not hired for any of the open positions, and that younger people were hired to those positions, he cannot demonstrate that he applied and was qualified for the positions. See Kralman v. Illinois Dep't of Veteran's Affairs, 23 F.3d 150, 153 (7th Cir. 1994). First, Ritter never applied for the mechanic position. While Ritter did express interest in being a mechanic in 1991, this single expression of interest does not qualify as applying for a position that became available in 1996. See, e.g., Fields v. Hallsville Indep. Sch. Dist., 906 F.2d 1017, 1022 (5th Cir. 1990) (single, oral expression of interest in a position over a year before vacancy at issue does not qualify as applying for position). Having not applied for the position, Ritter cannot demonstrate a prima facie case of discrimination due to HND's failure to hire him as a mechanic. See Kralman, 23 F.3d at 153; see also Konowitz v. Schnadig Corp., 965 F.2d 230, 234 (7th Cir. 1992) (no inference of discrimination from failure to transfer employee to another position where nothing in the record demonstrated that employee applied for any jobs or informed the company of his interest).

Furthermore, Ritter failed to demonstrate that he was qualified to fill the year-round mechanic or night watch positions. Ritter, noting that he had at least some experience as both a night watch person and a mechanic, asserts that he was better qualified than the younger employees who were hired to these positions. Ritter, however, glosses over the fact that he missed 76 days of work over four winters, thereby possibly endangering HND's horses and causing HND to have to pay other workers overtime to cover his position. This pattern of absenteeism forecloses a prima facie showing because it is clear that Ritter

could not satisfactorily perform a year-round position at HND. See Kralman, 23 F.3d at 153; see also Robin, 200 F.3d at 1092 (plaintiff's prima facie case fails where he cannot show he is meeting his employer's legitimate expectations); Hong v. Children's Mem'l Hosp., 993 F.2d 1257, 1262 (7th Cir. 1993) (same).

III.  Conclusion

For the foregoing reasons, we AFFIRM the grant of summary judgment to HND.

/1 Ritter's complaint also named HND's parent company, Duchossois Industries (DI), as a defendant. The district court granted summary judgment to DI on the ground that DI could not be held liable for the actions of its autonomous subsidiary, HND. Ritter does not challenge this holding on appeal and therefore any claims against DI are waived. See Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Med. Sch., 167 F.3d 1170, 1173 (7th Cir. 1999).

/2 As discussed later, the parties dispute whether Ritter, who worked in a seasonal position, was fired or whether HND simply refused to rehire him.