No. 4-07-0862                    Filed 9/26/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| HARVEY PARK DISTRICT, | ) | Direct Appeal of an |
|       Petitioner-Appellant, | ) | Order of the Illi- |
|       v. | ) | nois Labor Relations |
| THE AMERICAN FEDERATION OF | ) | Board, State Panel, |
| PROFESSIONALS; THE ILLINOIS LABOR | ) | No. S-CB-07-023 |
| RELATIONS BOARD, STATE PANEL; JACKIE | ) | |
| GALLAGHER, MICHAEL HADE, CHARLES | ) | |
| HERNANDEZ, REX PIPER, and MICHAEL | ) | |
| COLI, the Members of Said Board and | ) | |
| Panel in Their Official Capacity Only; | ) | |
| and JOHN BROSNAN, Executive Director | ) | |
| of Said Board in His Official Capacity | ) | |
| Only, | ) | |
|       Respondents-Appellees. | ) | |

_____

JUSTICE McCULLOUGH delivered the opinion of the court:

Petitioner, Harvey Park District (District), appeals the decision of respondent Illinois Labor Relations Board, State Panel (Board), finding the refusal of respondent, American Federation of Professionals (Union), to sign a collective-bargaining agreement following a failed ratification vote was not an unfair labor practice within the meaning of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/1 through 27 (West 2006)). Harvey Park District v. American Federation of Professionals, 23 Pub. Employee Rep. (Ill.) par. 132, No. S-CB-07-023 (Illinois Labor Relations Board, State Panel, September 10, 2007) (hereinafter 23 Pub. Employee Rep. (Ill.) par. 132). The District argues that the Board erred in holding that the failed ratifica-

tion vote provided adequate grounds to resume bargaining because the Union did not notify the District that the collective-bargaining agreement required ratification and approval by the membership.  We affirm.

In July 2005, the Board certified the Union as the exclusive representative of certain public employees of the District and the parties began negotiating the terms of an initial collective-bargaining agreement.  The parties did not identify ground rules for the bargaining sessions.  The District representative advised the Union representatives that he did not have authority to make a binding agreement without the approval of the District's board of commissioners.  The Union's constitution provides that "[a] collective[-]bargaining agreement must be ratified and approved by a majority of the members covered by said agreement present and voting on the question by secret ballot before the same shall be executed on behalf of the Union."

On September 20, 2006, the District representative and Union representatives reached an accord on the terms of an agreement.  On September 21, 2006, the agreement was "officially and publicly ratified" by the District and signed by the president of the District's board of commissioners.  Also on September 21, 2006, the Union conducted a ratification vote.  The membership rejected the agreement, identifying five issues: "(1) more money, (2) part-time employees not having equality in the con-

- 2 -

tract, (3) termination being at will, (4) recall rights, [and] (5) subcontracting of the grass." On September 22, 2006, the Union representatives advised the District representative that its membership had rejected the agreement and requested that the District and Union representatives resume bargaining. The District refused, claiming the parties had an agreement on September 20, 2006, and demanded the Union representatives sign the document.

In October 2006, the District filed an unfair labor practice charge with the Board, stating that on September 20, 2006, the District and the Union, by their representatives, fully agreed to all of the provisions of a collective-bargaining agreement and "[d]espite repeated requests, the Union has failed to sign the [a]greement." In June 2007, the executive director of the Board dismissed the unfair labor practice charge, stating:

> "[T]he Board has not yet spoken to the issue
> contained in this charge. Specifically, the
> District's claim is essentially that the
> Union must have specifically reserved its
> right to present the tentative agreement to
> the membership in order to establish a right
> to continue negotiations thereafter.
>    ***
>    Accordingly, one factor that leads to an

- 3 -

administrative dismissal of the charge is that it allows for direct access to the Board via an appeal of the [d]ismissal."  23 Pub. Employee Rep. (Ill.) par. 132, at 580 (Executive Director's dismissal order).

Further, the executive director opined that "a dismissal is appropriate on the merits," stating:

"The [District's] position on this matter is that the Union is required to specifically put an employer on notice of its intent to have a membership ratification vote in order to establish a right to further negotiations in the event that the membership rejects the agreement.  This position might have more merit were it not that contract ratification votes are a nearly universal component of the bargaining process.

     ***

In sum, I find that a failed contract ratification vote is sufficient basis for the Union's demand to continue negotiations, and that the [Union] did not waive its right to such a vote if it failed to specifically notify the [c]harging [p]arty of its intent

to do so. *** Clearly, party representatives present at negotiations are bound to support tentative agreements or advise their counterpart in advance that they will not do so, and party representatives are required to keep their proposals and representations in line with the parameters set by the principals. The District does not assert that the Union's representatives acted in blatant disregard of the negotiation process by bringing the tentative agreement to the membership. There is no evidence or assertion that the Unions's negotiation team actively encouraged the membership to reject the agreement." 23 Pub. Employee Rep. (Ill.) par. 132, at 580 (Executive Director's dismissal order).

In August 2007, the Board upheld the executive director's dismissal. This appeal followed.

Judicial review of an agency's decisions is governed by the Administrative Review Law (Review Law) (735 ILCS 5/3-101 through 113 (West 2004)). 5 ILCS 315/9(i) (West 2004); City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 204, 692 N.E.2d 295, 301-02 (1998). The Review Law speci-

fies that judicial review of a final administrative decision extends to all questions of law and fact presented in the record. 735 ILCS 5/3-110 (West 2004).

The Board's findings of fact are held prima facie true and correct and will only be reversed on appeal if they are against the manifest weight of the evidence. Illinois Fraternal Order of Police Labor Council v. Illinois Local Labor Relations Board, 319 Ill. App. 3d 729, 736, 745 N.E.2d 647, 653 (2001). A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. City of Tuscola v. Illinois State Labor Relations Board, 314 Ill. App. 3d 731, 733-34, 732 N.E.2d 784, 786 (2000). Where the issue before the reviewing court involves the Board's conclusions of law, however, the court's review is de novo. Illinois Fraternal Order of Police, 319 Ill. App. 3d at 736, 745 N.E.2d at 653.

The District alleges the Union violated sections 7 and 10(b)(4) of the Act. Section 7 of the Act provides that a public employer and the labor organization have the authority and duty to bargain collectively with regard to matters directly affecting wages, hours, and conditions of employment. 5 ILCS 315/7 (West 2004). Section 10(b)(4) of the Act provides that a labor organization commits an unfair labor practice if the labor organization or its agents refuse to bargain collectively in good faith with a public employer. 5 ILCS 315/10(b)(4) (West 2004).

- 6 -

The Act does not itself require ratification and approval of a collective-bargaining agreement by a majority of the members. In this case, however, the Union's own constitution mandates that collective-bargaining agreements be ratified and approved by a majority of the members "before the same shall be executed on behalf of the Union." The Labor Management Reporting and Disclosure Act of 1959 (Disclosure Act) requires a union to file its constitution and bylaws with the Secretary of Labor (29 U.S.C. §431(a) (2000)), and the contents are public information (29 U.S.C. §435(a) (2000)). The Disclosure Act was the product of congressional concern with widespread abuses of power by union leadership. Finnegan v. Leu, 456 U.S. 431, 435, 72 L. Ed. 2d 239, 243, 102 S. Ct. 1867, 1870 (1982). The Disclosure Act's primary aim was to ensure that labor organizations were governed democratically and were responsive to the will of their rank-and-file members. Finnegan, 456 U.S. at 435-36, 72 L. Ed. 2d at 244, 102 S. Ct. at 1870.

Although the District contends that "negotiators are presumed to have authority, or at the least apparent authority to negotiate and agree to a collective-bargaining agreement unless clearly, unequivocally, and expressly preserved at the bargaining table," in the present case (1) there is no past history which indicates that ratification is not necessary, (2) the parties did not identify ground rules for the bargaining sessions, (3) the

constitution requires ratification by the membership, (4) no Union representative stated that it was not bound by majority ratification, and (5) the District representative did not act in a way to clarify the Union representatives' authority. This court has not been presented with any evidence showing that the Union representatives had authority to conclude agreements without membership ratification.

The District's insistence that the contract not be ratified and approved by a majority of the employees attempts to bargain, not with respect to matters directly affecting wages, hours, and conditions of employment, but with respect to a matter which was exclusively within the internal domain of the Union. Members of a union have the right to determine the extent of authority delegated to their bargaining unit. It is within their province to determine whether or not their bargaining unit may enter into a binding contract with or without membership ratification. It is not an issue which the District can insist upon without mutual agreement by the Union, any more than the Union can insist that the contract be submitted to a governing body of the District. Although the Union, as the exclusive representative of certain public employees of the District, could negotiate an agreement on behalf of the employees it represented, its constitution requires a collective-bargaining agreement be ratified and approved by a majority of the members before it is

executed on behalf of the Union.

The cases upon which the District relies do not support its claims because they (1) do not mandate that a union must provide notice to an employer that the collective-bargaining agreement requires ratification and approval by the membership, (2) do not reference a constitutional requirement of ratification by the members, (3) refer to ground rules for the bargaining sessions not found in the instant case, (4) reference a signed collective-bargaining agreement not found in the present case, and (5) rely on a bargaining history or pattern not found in this case to establish authority to conclude a contract in current negotiations.  See Board of Education v. Sered, 366 Ill. App. 3d 330, 337, 850 N.E.2d 821, 828 (2006) (negotiation ground rules required that each party attending the negotiations have the authority to enter into a binding agreement); Truck Drivers, Oil Drivers, Filling Stations & Platform Workers Union Local 705, International Brotherhood of Teamsters v. Village of Maywood, 10 Pub. Employee Rep. (Ill.) par. 2018, No. S-CA-92-147, at X-102 (Illinois State Labor Relations Board, April 26, 1994) (in prior negotiations, village manager had served as village's sole bargaining representative and had signed parties previous bar-gaining agreement on behalf of village); American Federation of State, County & Municipal Employees, Council 31 v. City of Burbank, 4 Pub. Employee Rep. (Ill.) par. 2048, No. S-CA-88-19,

at 339 (Illinois State Labor Relations Board, November 7, 1988) ("members of the City negotiating team never indicated that they had sufficient authority to bind the City. In addition, the ground rules provided that no agreement would become final until ratified by the respective principals").

In the instant case, the executive director found there were no explicit discussions between the District and the Union during the negotiations in which the parties agreed that membership ratification was not needed to establish a contract, noting "contract ratification votes are indeed a nearly universal component of the bargaining process." 23 Pub. Employee Rep. (Ill.) par. 132, at 579 (Executive Director's dismissal order). In fact, the Union's constitution provides that "[a] collective[-]bargaining agreement must be ratified and approved by a majority of the members covered by said agreement present and voting on the question by secret ballot before the same shall be executed on behalf of the Union." The Board upheld the dismissal of the executive director. Because (1) the parties did not explicitly agree that any agreement between the negotiators did not require ratification by the employees, (2) the Union's constitution required membership ratification as a prerequisite to entering a binding agreement, (3) no Union representative indicated he had authority to enter into a binding agreement without membership ratification, and (4) there was no established

history of entering into bargaining agreements without such ratification, it was within the authority of the Board, on this record, to dismiss the charge.

For the reasons stated, we affirm the Board's decision.

Affirmed.

APPLETON, P.J., and MYERSCOUGH, J., concur.