THE COUNTY OF PEORIA *et al.*, Petitioners-Appellants, v. ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

Third District    No. 3—98—0908

Opinion filed June 22, 1999.

Kevin W. Lyons, State's Attorney, and Patrick A. Murphey (argued) and Scott A. Brunton (argued), both of Miller, Hall & Triggs, both of Peoria, for petitioners.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Diane M. Potts (argued), Assistant Attorney General, of counsel), for respondent.

Melissa Auerbach (argued), of Cornfield & Feldman, of Chicago, for re-

spondent American Federation of State, County and Municipal Employees, Council 31, Local 2661.

JUSTICE KOEHLER delivered the opinion of the court:

The petitioners-appellants, County of Peoria (County) and sheriff of Peoria County (together referred to herein as Employers), appeal from an order of the Illinois State Labor Relations Board (Board) denying their petition to exclude court security officers from the security personnel bargaining unit. The question before this court is: Was the Board's decision denying exclusion of court security officers from the security personnel bargaining unit clearly erroneous when: (1) it concluded that the creation of the classification did not effect a substantial change in bargaining rights requiring reclassification; and (2) it concluded that the legislatively created position of court security personnel was a successor job title which did not require exclusion from the bargaining unit? Because we conclude that the Board's decision was not clearly erroneous, we affirm.

## FACTS

The sheriff began assigning courthouse jail officers in 1981. The courthouse jail officers escorted inmates while in the courthouse; carried weapons while on duty, which required that the officers be weapons certified; made warrant arrests; and reported to the court security administrator, who was either a deputy sheriff or a sheriff detective. The Board in 1984 certified a bargaining unit of officer employees represented by the respondent-appellant, American Federation of State, County, and Municipal Employees (AFSCME), that included corrections officers, transport officers and courthouse jail officers.

The sheriff in 1985 reassigned the deputy sheriffs from courthouse security to new assignments and gave the courthouse jail officers responsibility for courtroom security and broader arrest powers. Subsequently, the courthouse jail officers' responsibilities gradually increased to include staffing security screening stations, patrolling the city block around the courthouse, and having broader authority to issue citations for municipal ordinance violations in and around the courthouse. The courthouse jail officers trained in weapons certification, search and seizure, arrest and hostage negotiation. Contact with other unit employees primarily occurred only during inmate transport. Additionally, the majority of the jail officers were not weapons certified and not authorized to carry weapons on duty. By 1996, the number of courthouse jail officers had increased from 5 to 11. There have been four additional bargaining agreements between the county and the unit since 1984.

The Illinois Attorney General concluded in a 1996 advisory memo-

randum that only deputy sheriffs could be employed as courthouse security personnel if those personnel were authorized to carry weapons and make arrests. 1996 Ill. Atty Gen. Op. No. 96—17. Consequently, the legislature enacted Public Act 89—685 (Act) (Pub. Act 89—685, eff. June 1, 1997) to create the position of court security officer. The Act amended the Illinois Counties Code (55 ILCS 5/3—6012.1 (West 1996)) authorizing county sheriffs to employ court security officers in addition to deputy sheriffs as courthouse security. It also amended the Illinois Police Training Act (50 ILCS 705/2 (West 1997)), excluding the court security officers from the definition of "peace officer," and the Illinois Criminal Code of 1961 (720 ILCS 5/24—2(a)(13) (West 1996)), allowing the court security officers to carry a weapon while performing official duties and while commuting between home and the workplace. Under the Act, the court security officers are sworn officers of the sheriff who, through the county sheriff's merit commission, has hiring, firing and discipline authority over them.

Following the enactment, the county developed a court security officer job classification. Given the choice by the sheriff, the current courthouse jail officers all chose to become court security officers rather than returning to jail officer duty. After the county notified AFSCME it intended to implement the classification, AFSCME requested to bargain over the impact of the classification on the unit and its members. The court security officers did not request that they be removed from their current bargaining unit. Consequently, the Employers filed a unit clarification petition to exclude the court security officer position from the bargaining unit. After administrative hearing on the petition, the Board concluded that the newly created classification was a successor job title and that the employees' bargaining rights were not substantially changed. Therefore, the officers were properly included in its historical bargaining unit. The Employers now appeal.

## ANALYSIS

■ Judicial review of an administrative agency's decision extends to all questions of law and fact. 735 ILCS 5/3—110 (West 1996). An administrative agency's findings and conclusions of fact are considered *prima facie* true and correct. 735 ILCS 5/3—110 (West 1996). In reviewing an administrative agency's factual findings, we do not reweigh the evidence; therefore, we are limited to determining whether the factual findings are against the manifest weight of the evidence. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998). However, our review of an administrative agency's determinations on questions of law is *de novo*.

*City of Belvidere*, 181 Ill. 2d at 205, 692 N.E.2d at 302. Where the issue involves the legal effect of a given set of facts, a mixed question of law and facts, we apply the clearly erroneous standard of review. *City of Belvidere*, 181 Ill. 2d at 205, 692 N.E.2d at 302. In the present case, we must decide whether the new classification of courthouse security officer is a change in the employees' duties and rights, such that the Board should have concluded that the employees should be separated from the bargaining unit. Thus, we review under the clearly erroneous standard because it is a mixed question of law and fact.

The Employers argue that the Act created an entirely new job classification that did not exist under previous Illinois law. The Board's determination that the officers' job responsibilities are essentially the same as they were prior to the Act ignores the incremental but substantial changes that have taken place since the unit was first certified in 1984, the proper date for comparison to be made on the certification petition. Moreover, the court security officers are not security personnel. The Board's decision, therefore, allows security and nonsecurity employees in the same bargaining unit, contrary to its earlier decision in *County of Lake*, 1 Pub. Employee Rep. (Ill.) par. 2018, Nos. S—RC—59, S—RC—85 (ISLRB August 29, 1985), that such a unit is presumptively inappropriate, and ignores the lack of community of interest between the security and nonsecurity groups within the unit. Further, they contend that the Board's erroneous reliance on bargaining history to conclude that the officers should be included in the current bargaining unit fails to give effect to the legislature's intent that the officers have the right to strike.

The Board and AFSCME argue that the Act is merely the legislature's response to the Illinois Attorney General's opinion and that it only created a classification for the job the employees were already performing. The Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 1994)) (Labor Relations Act), by its express terms, allows nonsecurity and security personnel in the same bargaining unit. Although the Board, in a previous case, created a presumption against such an inclusion in a newly created bargaining unit, it did not prohibit such an inclusion in an existing unit with a bargaining history. Moreover, because the officers were nonsecurity personnel prior to the Act, they voluntarily gave up their right to strike when they joined the bargaining unit in 1984. Furthermore, even if the officers previously were security personnel without the right to strike prior to the Act, that change in the law is not sufficient to exclude the officers from the bargaining unit. The Illinois Public Labor Relations Act (5 ILCS 315/3 (West 1994)) requires only an appropriate bargaining unit, not the most appropriate bargaining unit; in determining an

appropriate bargaining unit, the Board may properly consider bargaining history. Finally, although they might be prevented from striking, the court security officers' bargaining position is otherwise strengthened by their inclusion in the larger unit.

Was the Board clearly erroneous when it concluded that the court security officers' job functions under the Act are substantially the same as prior to its enactment and, therefore, the court security officers should not be excluded from their current bargaining unit? The Act reads in pertinent part:

"The sheriff *** may hire court security officers ***. Court security officers may be designated by the Sheriff to attend courts and perform the functions set forth in 3—6023. Court security officers shall have the authority to arrest; however, such arrest powers shall be limited to performance of their official duties as court security officers. Court security officers may carry weapons, upon which they have been trained and qualified as permitted by law, at their place of employment and to and from their place of employment with the consent of the Sheriff. The court security officers shall be sworn officers of the Sheriff and shall be primarily responsible for the security of the courthouse and its courtrooms. The court security officers shall be under the sole control of the sheriff of the county in which they are hired." Pub. Act 89—685, eff. June 1, 1997.

The Act further provides:

"Each sheriff shall, in person or by deputy or court security officer, attend upon all courts held in his or her county when in session, and obey the lawful orders and directions of the court, and shall maintain the security of the courthouse. Court services customarily performed by sheriffs shall be provided by the sheriff or his or her deputies or court security officers rather than by employees of the court, unless there are no deputies, or court security officers available to perform such services." Pub. Act 89—685, § 15, eff. June 1, 1997.

At bar, the record reflects that the court security officers were the identical personnel doing substantially the same job that they had been performing prior to the Act. The court security officers provided security for the courthouse and the immediate vicinity. They had limited arrest powers and authority to carry weapons if properly trained and certified. The court security officers' duties had changed gradually in response to the change in courthouse security needs. Indeed, the language of the Act creating and describing the position does not describe a significant change in the court security officers' duties. The functions they performed prior to the Act were not substantially different from those they now perform pursuant to the

Act. Accordingly, we conclude that the Board was not clearly erroneous when it concluded that the Act did not entail a substantial change in job duties requiring the court security officers to be excluded from the current bargaining unit.

■ Did the change in the law effect a substantial change in employee bargaining rights such that it requires that the court security officers be separated from the bargaining unit? Previously, the Board has concluded that "[a]llthough there may be limited circumstances in which it might be appropriate to add or remove employees from a bargaining unit because of a change in law, we believe that the Act protects employee freedom of choice. Employees should be given that choice, and we will generally not allow the unit clarification procedure to be utilized to deny it to employees." *Illinois Department of Central Management Services*, 3 Pub. Employee Rep. (Ill.) par. 2045, No. S—UC—54, at VIII—285 (ISLRB June 2, 1987). The Labor Relations Act "reflects a strong legislative policy in favor of protecting and preserving traditional patterns and practices of collective bargaining that have existed in state and local government." *City of Rockford*, 14 Pub. Employee Rep. (Ill.) par. 2030, No. S—CA—97—125, at X—213 (ISLRB July 22, 1998) (hereinafter 14 Pub. Employee Rep. (Ill.) par. 2030). Under the Labor Relations Act, the Board must determine a unit appropriate for collective bargaining keeping in mind its express purpose to assure public employees the fullest freedom in exercising the rights it guarantees. *Rend Lake Conservancy District*, 14 Pub. Employee Rep. (Ill.) par. 2051, No. S—RC—98—78 (ISLRB October 26, 1998). Among the factors the Board should consider in determining an appropriate unit are:

> "historical pattern of recognition; community of interest including employee skills and functions; degree of functional integration; interchangeability and contact among employees; fragmentation of employee groups; common supervision, wages, hours and other working conditions of the employees involved; and the desires of the employees." 5 ILCS 315/9(b) (West 1994).

The Employers rely on the Board's conclusion in *County of Lake*, 1 Pub. Employee Rep. (Ill.) par. 2018, that combining security and nonsecurity personnel in a bargaining unit is presumptively inappropriate. However, we distinguish *County of Lake* from the instant case inasmuch as the Board was addressing an initial petition to certify a unit, not a petition for clarification. The Employers also cite *County of Tazewell*, 1 Pub. Employee Rep. (Ill.) par. 2022, No. S—RC—2 (ISLRB September 27, 1985), and *County of Kane*, 2 Pub. Employee Rep. (Ill.) par. 2012, No. S—RC—95 (ISLRB February 21, 1986), for the same proposition. However, neither of those cases involved a unit clarifica-

tion petition and both are likewise distinguishable. Moreover, *McHenry County Sheriff*, 3 Pub. Employee Rep. (Ill.) par. 2013, No. S—RC—159 (ISLRB January 7, 1987), on which the Employers also rely, is distinguishable in that the Board concluded that there was not an historical bargaining unit of security and nonsecurity personnel. In *Du Page Area Vocational Education Authority v. State of Illinois Educational Labor Relations Board*, 167 Ill. App. 3d 927, 937, 522 N.E.2d 292, 298 (1988), this court "specifically recognize[d] that the benefit or disadvantage of a single bargaining unit, made up of different employee subgroups, which can negotiate a single comprehensive bargaining agreement, is a factor the Board can consider in determining 'community of interest.' " Further, in *City of Rockford*, 14 Pub. Employee Rep. (Ill.) par. 2030, the Board refused to fragment a well-established bargaining unit that could result in employees obtaining different terms and conditions of employment than their fellow unit members. Such an outcome, the Board reasoned, would be contrary to the "core philosophy of collective bargaining, which *** is predicated on the notion that by pooling their strength and acting through a single representative, the unit members maximize their opportunities for obtaining improvements in wages and working conditions." *City of Rockford*, 14 Pub. Employee Rep. (Ill.) par. 2030, at X—214. *City of Rockford* addressed a situation in which employees who otherwise had the right to strike were included in a bargaining unit in which the majority of its members did not have such right. The Board concluded that "whether the [employees] have the right to strike is logically resolved in a manner similar to the Act's treatment of this issue in the context of security employee units. *** [W]here the majority of employees in [the] unit are deemed 'security employees,' non-security employees included in the unit are deemed security employees and thus subject to *** interest arbitration." *City of Rockford*, 14 Pub. Employee Rep. (Ill.) par. 2030, at X—214. Plainly, while the Board has previously articulated a presumption against including nonsecurity personnel in bargaining units which include security personnel, it also recognizes that such units may and do exist. Moreover, the law provides protection of the rights of the nonsecurity personnel so included.

■ Reviewing the facts of the instant case and its previous decisions, the Board noted that neither the court security officers nor the other unit members sought exclusion of the court security officers. Further, there are no facts demonstrating that the court security officers' inclusion in the unit would create conflict among the members. The Board concluded that the court security officers' strike rights are not an adequate basis on which to exclude the employees. In so concluding, the Board's decision gives effect to the legislative policy

behind the Labor Relations Act of preserving traditional patterns and practices of collective bargaining. Accordingly, we conclude that where the Board's decision is based on the facts of the case before it, gives effect to the Labor Relations Act and follows case precedent, its decision is not clearly erroneous and we therefore affirm.

Affirmed.

HOLDRIDGE, P.J., and SLATER, J., concur.