# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*International Brotherhood of Electrical Workers, Local 21 v. Illinois Labor Relations Board*, 2011 IL App (1st) 101671

---

| | |
|---|---|
| Appellate Court Caption | INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 21, Petitioner, v. ILLINOIS LABOR RELATIONS BOARD; THE CITY OF CHICAGO; and SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 73, Respondents. |
| District & No. | First District, Third Division<br>Docket No. 1-10-1671 |
| Rule 23 Order filed | August 25, 2011 |
| Rule 23 Order withdrawn | September 21, 2011 |
| Opinion filed | September 28, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Illinois Labor Relations Board had the authority to dismiss a petition seeking to sever three of respondent city's job classifications from an existing collective bargaining unit without a hearing if the Board determined there was no reasonable cause to believe a question of representation existed, and in the instant case the dismissal was not clearly erroneous where the majority interest petition filed by petitioner was not a procedurally proper means to achieve a severance, petitioner did not satisfy the two-part test for severance, petitioner presented no basis to reconsider the appropriateness of the bargaining unit or to show that the employees seeking the severance had dominant interests that were incompatible with the interests of the larger unit, there was no "long-standing" conflict or ineffective representation, and the fact that the existing unit voted to approve an agreement to exchange layoffs for concessions was a reasonable tradeoff in the bargaining process. |

| Decision Under Review | Petition for review of order of Illinois Labor Relations Board, Local Panel, Nos. L-AC-10-006, L-UC-10-001, L-RC-10-001. |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Robert E. Bloch and Omar J. Shehabi, both of Dowd, Bloch & Bennet, of Chicago, for petitioner. |
| | Mara S. Georges, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Susanne M. Loose, Assistant Corporation Counsel, of counsel), for respondent City of Chicago. |
| | Lisa Madigan, Attorney General, of Chicago (Evan Siegel, Assistant Attorney General, of counsel), for respondent Illinois Labor Relations Board, Local Panel. |
| | Joel A. D'Alba and Michele Cotrupe, both of Asher, Gittler & D'Alba, Ltd., of Chicago, for respondent Service Employees International Union, Local 73. |
| Panel | JUSTICE SALONE delivered the judgment of the court, with opinion. Presiding Justice Lavin and Justice Sterba concurred in the judgment and opinion. |

**OPINION**

¶ 1    This is a direct appeal from a final order of the Illinois Labor Relations Board (the Board) dismissing petitions filed by the International Brotherhood of Electrical Workers, Local 21 (Local 21). In these petitions, Local 21 sought to sever three of respondent City of Chicago's (City) job classifications–Police Communications Officers I and II (PCOs) and Aviation Communications Officers (ACOs)–from the existing collective bargaining unit for public safety employees, commonly known as "Unit II." Currently, employees of Unit II are jointly represented by Local 21 and respondent Service Employees International Union, Local 73 (Local 73). Alleging that PCOs and ACOs shared a significant and distinct community of interest, and that they also had conflicts with other segments of the bargaining unit resulting

in ineffective representation, Local 21 requested that these three job classifications be severed from Unit II and that Local 21 be certified as their exclusive representative.

¶ 2    The City filed an objection to the petitions, alleging they were procedurally and substantively deficient. Local 73 intervened, and also objected on similar grounds. An administrative law judge (ALJ) agreed with respondents and subsequently issued a recommended decision and order that the case be dismissed.

¶ 3    Local 21 filed exceptions with the Board, challenging the ALJ's recommendation. The City and Local 73 filed responses to these exceptions. Ultimately, the Board accepted the ALJ's recommendation and dismissed the petitions. Local 21 now appeals the decision of the Board,[1] contending that it erred in dismissing Local 21's case. For the reasons that follow, we affirm the Board's ruling.

¶ 4                                    BACKGROUND

¶ 5    Unit II is the City's collective bargaining unit for public safety employees, composed of classifications of non-sworn personnel generally involved in a law enforcement or protective service function. Upon its creation in 1984, Unit II consisted of 15 public safety job classifications. Between 1993 and 1995, PCO and ACO classifications were added to Unit II. Currently, there are approximately 2,100 employees in Unit II, of which approximately 375 fall within the PCO and ACO classifications.

¶ 6    Since 1984, Unit II has been represented by a coalition of unions, and since 1986, the City and Unit II's joint representatives have negotiated collective bargaining agreements covering all Unit II job classifications. Currently, the joint representatives of Unit II are Local 21–which represents only those employees with PCO and ACO titles–and Local 73, which represents all other job classifications within the unit.

¶ 7    Unit II's seventh collective bargaining agreement was negotiated by the parties during the summer of 2009.[2] On July 17, 2009, near the end of negotiations on this agreement, Local 21 filed three petitions with the Board: a representation petition, which Local 21 designated as a "majority interest petition"; a unit clarification petition; and a petition to amend certification. In a letter accompanying the petitions, counsel for Local 21 stated that all three were "directed to the same purpose: to sever the [PCO I], [PCO II] and [ACO] classifications from a larger unit known as the Public Safety Employees Union Unit II" and create a stand-alone bargaining unit. The letter further stated that severance was warranted on the basis that the petitioning group "share[s] a significant and distinct community of interest and ha[s] received ineffective representation of their particular interests within Unit II *** [to the

---

[1]This court has jurisdiction to hear direct appeals from decisions of the Board pursuant to section 9(i) of the Illinois Public Labor Relations Act (5 ILCS 315/9(i) (West 2010)), section 3-113 of the Administrative Review Law (735 ILCS 5/3-113 (West 2010)) and Illinois Supreme Court Rule 335 (Ill. S. Ct. R. 335 (eff. Feb. 1, 1994)).

[2]This agreement covered the period of July 1, 2007, through December 31, 2010, and was ratified by the city council on August 9, 2009.

-3-

extent that] Local 21 and the employees it represents no longer consent to joint representation." The letter concluded: "We regret any confusion that may be caused by filing three separate petitions, but we were unable to locate any statutory or regulatory source that identifies precisely the form of petition required for this purpose." The petitions were signed by 315 of 375 employees in the three specified classifications.

¶ 8 The City filed a response, alleging that the petitions were "procedurally inappropriate" under both the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2010)) (Act) and the Board's rules and regulations contained within the Illinois Administrative Code (80 Ill. Adm. Code 1210 *et seq.* (2011)). The City also contended that the petitions were substantively deficient, in that Local 21 suggested no facts to satisfy the Board's standards for allowing severance from an already-existing bargaining unit. Thereafter, Local 73 also filed a position statement largely mirroring the arguments set forth by the City.

¶ 9 On September 25, 2009, the ALJ issued a recommended decision and order dismissing the petitions. As an initial matter, the ALJ determined that both the unit clarification petition and the petition to amend certification were procedurally inappropriate for seeking to sever a segment of employees from an existing bargaining unit and placing them into a newly created stand-alone unit.

¶ 10 The ALJ further found that the representation petition was also procedurally barred. The ALJ observed that Local 21 filed this petition as a "majority interest petition"[3] rather than as an "election petition." However, because PCOs and ACOs were already represented for purposes of collective bargaining, the ALJ determined that pursuant to the Board's rules (80 Ill. Adm. Code 1210.20(b) (2011)), a petition to sever a fragment of employees from a larger bargaining unit is only properly filed as an election petition.

¶ 11 Apart from the petitions' procedural deficiencies, the ALJ further determined that they were also substantively deficient. The ALJ found that even if Local 21 refiled its severance petition in the proper form, it would still be unable to demonstrate that severance is appropriate because it failed to present sufficient facts to satisfy the Board's two-part test.

¶ 12 Relying upon *City of Chicago*, 9 PERI ¶ 3008 (ILLRB 1993) (hereinafter *City of Chicago (Aviation Security Officers)*), the ALJ first found that Local 21 did not establish that the PCOs and ACOs shared a significant and distinct community of interest apart from the larger unit. The ALJ noted that a petitioner "must do more than demonstrate that the group to be severed constitutes an appropriate unit for the purposes of collective bargaining."

¶ 13 The ALJ further found that Local 21 also failed to satisfy the second prong of the Board's severance test, in that it did not demonstrate sufficient conflict between the unit to be severed with other segments of the existing bargaining unit or a record of ineffective and

---

[3]In a "majority interest petition," the petitioner alleges that a majority of the employees in a unit wish to be represented by the petition for purposes of collective bargaining. In contrast, in an "election petition," the petitioner alleges that at least 30% of the employees in a unit request a secret ballot election to determine whether petitioner should be certified as the exclusive collective bargaining agent for the employees in that unit. When filing a Representation Petition, the petitioner must indicate under which procedures it wants its petition to be processed.

unresponsive representation of the particular interests of those employees. The ALJ observed that, in the letter accompanying the petitions, counsel simply alleged that the petitioned-for employees "have received ineffective representation of their particular interests within Unit II" without further factual support. The ALJ also noted that although Local 21 claimed that the PCOs and ACOs were ineffectively represented, Local 21 itself "is one of the petitioned-for employees' joint bargaining representatives."

¶ 14   The ALJ then distinguished *City of Chicago*, 2 PERI ¶ 3022 (ILLRB 1986) (hereinafter *City of Chicago* (*Bridge Tenders*) or *Bridge Tenders*), a case in which the Board found severance to be appropriate where the exclusive bargaining representative of the employee group seeking severance had a long-standing record of ineffective and unresponsive representation, based upon numerous factors not present here. Finally, the ALJ observed "that on several separate occasions the Board has dismissed previous attempts at severing Unit II." Based upon the foregoing, the ALJ recommended dismissal of Local 21's petitions.

¶ 15   Thereafter, Local 21 filed exceptions to the ALJ's recommended decision and order, as well as a supporting brief. In these documents, Local 21 focused on the events surrounding the negotiation of Unit II's seventh successive collective bargaining agreement. Local 21 related that, during these negotiations, the City served approximately 500 layoff notices to employees within Unit II. However, these notices were directed solely to job classifications represented by Local 73, with none sent to any employees represented by Local 21. Local 21 asserted that the City thereafter offered a tradeoff: in exchange for saving the jobs of the 500 employees who had received layoff notices, all Unit II employees were required to agree to concessions, including forgoing retroactive wage increases, making holidays unpaid and substituting compensatory time for overtime pay. Local 21 alleged that the City and Local 73 had negotiated this amendment to the collective bargaining agreement without notice to, or involvement from, Local 21. Local 21 further alleged that because its members gained nothing from this amendment, and, in fact, suffered a detriment from it, the employees it represented voted nearly unanimously against ratification. The contract, nevertheless, was approved, based upon the aggregate vote of all members of Unit II. Local 21 pointed to this course of events as evidence that it and Local 73 no longer jointly represented Unit II, and that this conflict and ineffective representation justified severance.

¶ 16   Local 21 further argued that although the Board had on repeated previous occasions found that segments of Unit II could not be severed, that precedent was "questionable" because of what it characterized as the "changed circumstances" in Unit II as evidenced by these negotiations.

¶ 17   The City and Local 73 filed responses to Local 21's exceptions. Both parties disputed the allegations of Local 21 with respect to the negotiations surrounding the collective bargaining agreement, and argued that the ALJ's recommendation that the Board dismiss Local 21's petitions was correct and should be accepted.

¶ 18   On May 13, 2010, the Board issued its decision and order accepting the recommended decision and order of the ALJ and dismissing Local 21's petitions. First, the Board agreed with the ALJ that the petition to amend certification and the unit clarification petition were procedurally inappropriate vehicles for severing a segment of employees from an already-

existing bargaining unit.

¶ 19      In addition, the Board agreed with the ALJ's finding that Local 21's representation petition was also procedurally deficient. The Board determined that Local 21 had incorrectly filed this petition as a "majority interest petition." Under its rules (80 Ill. Adm. Code 1210.20(b)), the Board concluded that a majority interest petition may not be used where, as here, the employees requesting severance from a bargaining unit are already represented by a labor organization.

¶ 20      The Board also agreed with the ALJ that even if Local 21 had filed its petition in proper form, dismissal of the representation petition was warranted on substantive grounds. Taking Local 21's allegations as true, the Board nevertheless held that the severance sought by Local 21 was improper for many of the same reasons that it had previously rejected the severance of other job classifications from Unit II. Citing a decision which also involved Unit II, *Illinois Fraternal Order of Police Labor Council v. Illinois Local Labor Relations Board*, 319 Ill. App. 3d 729 (2001), the Board determined that Unit II continues to be "one bargaining unit" that is "jointly represented by a coalition of unions." Because "all of the unions, as a group, represent each member in [Unit II] regardless of how, for administrative purposes, the coalition has linked or divided up," the Board concluded that Local 21 could not meet the Board's severance standards: it had shown neither that the PCOs and ACOs formed a distinct and homogeneous group apart from the other members of Unit II, nor that the group suffered unresponsive or disparately poor representation in the existing unit. As did the ALJ, the Board also cited *Bridge Tenders* to note that *Bridge Tenders* was the only case in which it granted severance and distinguished the factual situation there from the circumstances in the matter at bar.

¶ 21      Local 21 petitioned for review of the Board's decision dismissing its representation petition. As Local 21 has not appealed the Board's dismissal of its petition to amend certification nor its unit clarification petition, these two petitions are not at issue in this appeal.

¶ 22                              DISCUSSION

¶ 23      Local 21 contends that the Board erred in several respects by dismissing its representation petition. As an initial matter, Local 21 asserts that it was error for the Board to dismiss the petition without first conducting an evidentiary hearing pursuant to section 9(a) of the Act (5 ILCS 315/9(a) (West 2010)). In addition, Local 21 maintains that the Board erred in finding that the petition was procedurally inappropriate, and in concluding that even if it had been filed in the proper form, Local 21 had not adduced sufficient evidence to satisfy the Board's severance standard. We hold that the arguments advanced by Local 21 lack merit.

¶ 24      The Administrative Review Law (735 ILCS 5/3-101 *et seq*. (West 2008)) governs judicial review of Board decisions and extends to all questions of law and fact presented by the record. *Illinois Fraternal Order of Police Labor Council v. Illinois Local Labor Relations Board*, 319 Ill. App. 3d 729, 736 (2001); 5 ILCS 315/9(i) (West 2010). The standard of review applicable to an agency's decision depends upon whether the question presented is one of fact or law. *City of Belvidere v. Illinois State Labor Relations Board*, 181

Ill. 2d 191, 204 (1998). An administrative agency's findings on questions of fact are deemed to be *prima facie* true and correct (735 ILCS 5/3-110 (West 2010)), and such findings will only be set aside if they are against the manifest weight of the evidence. *County of Peoria v. Illinois State Labor Relations Board*, 305 Ill. App. 3d 827, 830 (1999). A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Illinois Fraternal Order of Police Labor Council*, 319 Ill. App. 3d at 736.

¶ 25    The same deference, however, is not accorded to the Board's conclusions of law, which are reviewed *de novo*. *City of Belvidere*, 181 Ill. 2d at 205. As such, "an agency's statutory interpretation is not binding on a reviewing court, and will be rejected, if unreasonable or erroneous." *City of Tuscola v. Illinois State Labor Relations Board*, 314 Ill. App. 3d 731, 734 (2000).

¶ 26    A mixed question of law and fact is presented when an agency "examin[es] *** the legal effect of a given set of facts." *City of Belvidere*, 181 Ill. 2d at 205. When such a question is presented, the Board's decision will be reversed only if it is clearly erroneous. *Illinois Council of Police v. Illinois Labor Relations Board, Local Panel*, 387 Ill. App. 3d 641, 657-58 (2008). This standard of review lies "between a manifest weight of the evidence standard and a *de novo* standard so as to provide some deference to the Board's experience and expertise." *City of Belvidere*, 181 Ill. 2d at 205.

¶ 27    In the present case, Local 21 contends that review should be *de novo*, while respondents assert that a clearly erroneous standard applies. Although the test to determine whether an evidentiary hearing is required under the Act is a legal one, because "that test must be applied to and depend upon the sufficiency of facts presented to the Board during its investigation of the representation *** petition," it is a mixed question of law and fact to which the clearly erroneous standard of review applies. *Illinois Council of Police*, 387 Ill. App. 3d at 657-58. Similarly, the Board also applied the law to the facts of the case to determine whether Local 21 had filed a procedurally appropriate petition and whether severance of PCOs and ACOs from Unit II was warranted. Accordingly, on these issues as well, the Board's decision will not be reversed unless that determination was clearly erroneous. Under the clearly erroneous standard, we must affirm an agency's decision unless we are "left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Id*.

¶ 28                    A. The Board's Failure to Grant a Hearing

¶ 29    Local 21 contends that the Board erred by dismissing its petition without an evidentiary hearing. We disagree, and hold that the Board followed proper investigatory and dismissal procedures as defined by the Act and the Board's own rules.

¶ 30    Both the Act and the Board's rules authorize the Board to issue decisions in the absence of conducting a hearing. The Act declares that its purpose is to provide an "expeditious, equitable and effective procedure for the resolution of labor disputes." 5 ILCS 315/2 (West 2010). To achieve this goal, the Act does not require the Board to hold evidentiary hearings in every instance on disputed questions of representation. Rather, it provides that when considering a representation petition, "the Board shall investigate such petition, and if it has reasonable cause to believe that a question of representation exists, shall provide for an

appropriate hearing upon due notice." 5 ILCS 315/9(a) (West 2010). Thus, the Act allows the Board to forgo a hearing if the Board's investigation finds the absence of "reasonable cause." *Id*.; see also *Illinois Council of Police*, 387 Ill. App. 3d at 663.

¶ 31    Similarly, the Board's rules provide that a representation petition may be dismissed without a hearing under several circumstances: when the petition is untimely; when the bargaining unit is inappropriate; when the showing of interest is inadequate; when the employer is not covered by the Act; or when "there is no reasonable cause to believe that a question of representation exists." 80 Ill. Adm. Code 1210.100(b)(7)(A) (2011).

¶ 32    Although Local 21 does not dispute that the Board has the authority to decide petitions without conducting an evidentiary hearing, it nevertheless contends that a hearing was required under the facts presented in this case. According to Local 21, the "ALJ should have issued a show cause order" asking it to explain "why a hearing was necessary before dismissing the petition." We reject Local 21's argument, finding that it is premised upon a misapprehension of law.

¶ 33    In an action for administrative review, it is the final decision of the administrative agency which is subject to review. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006). Local 21 appears to have lost sight of the fact that under this principle, our review is of the decision rendered by the Board–not that of the ALJ. Although the ALJ found Local 21's petition to be procedurally and substantively flawed,[4] Local 21 availed itself of the opportunity under the Board's rules (see 80 Ill. Adm. Code 1200.135(b)(1) (2011)) to challenge the ALJ's findings and recommendation by filing exceptions with the Board. In its brief in support of these exceptions, Local 21 explained in detail all the reasons it believed that its petition was valid and should not be dismissed. The Board, after reviewing Local 21's exceptions and supporting brief, was authorized to either dismiss the petition where "there is no reasonable cause to believe that a question of representation exists" (80 Ill. Adm. Code 1210.100(b)(7)(A)), or issue an order to show cause requesting that the petitioner provide sufficient evidence to overcome the petition's deficiencies (80 Ill. Adm. Code 1210.100(b)(6)).

¶ 34    Under this framework, we hold that the Board could properly dismiss Local 21's petition without conducting an evidentiary hearing. The Board was vested with express authority to dismiss the petition without a hearing if, after it reviewed the case it determined that there was no reasonable cause to believe a question of representation existed.[5]

¶ 35                              B. Dismissal of the Petition

¶ 36    Having found that the Board could properly dismiss Local 21's petition without a hearing

---

[4]We note that although a petitioner need not present all its evidence in the petition, "the petition should at least raise an issue as to whether" the evidentiary requirements "could possibly be met." *County of Lake* (*Sheriff's Department*), 8 PERI ¶ 2051 (ILLRB 1992), at X-304.

[5]We note that, in its reply brief, Local 21 omits any discussion of the contention raised in its opening brief that the Board erred in failing to provide it with an evidentiary hearing.

where it had no reasonable cause to believe that a question of representation existed, we next consider the broader issue of whether the dismissal itself was clearly erroneous. Local 21 contends that the Board erred in concluding that there was no reasonable cause to believe that a representation question existed by finding that the petition was procedurally inappropriate, and in concluding that even if it had been filed in the proper form, Local 21 could not meet the Board's standard for granting severance. We reject Local 21's arguments.

¶ 37                                    1. Procedural Grounds

¶ 38        Local 21's representation petition was filed as a majority interest petition, seeking certification as the exclusive representative by attempting to establish through evidence submitted with the petition that a majority of the employees in the proposed unit supported its representation. See *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 597-99 (2008). Applying its rules to the facts presented, the Board determined that a majority interest petition was a procedurally improper vehicle for Local 21 to use in requesting severance of employees from a bargaining unit where those employees are already represented by a labor organization.

¶ 39        Local 21's argument that the Board erred in dismissing its petition on procedural grounds consists of statements scattered throughout its briefs, including that its representation petition was dismissed on a "hypertechnical" basis, that "the Board or its agent could have advised Local 21 to [select] the election option," and that the Board "fail[ed] to allow Local 21 an opportunity to amend its majority interest petition to make it an election petition."

¶ 40        Contrary to Local 21's assertion, a petitioner's designation of a representation petition as either a majority interest petition or an election petition is not a mere technical requirement. The Board's rules clearly define the distinctions between election and majority interest petitions and under what circumstances they may be used:

> "(a) A labor organization seeking recognition in a proposed appropriate bargaining unit *in which no other labor organization has attained recognition rights* in accordance with the Act may request that the employer voluntarily recognize it or may file a representation petition with the Board.
>
> (b) A labor organization seeking recognition in a proposed appropriate bargaining unit in which another labor organization is recognized in accordance with the Act may pursue its request only by filing a representation petition seeking election with the Board. *Majority interest petitions may not be utilized where another labor organization is recognized in accordance with the Act.*" (Emphases added.) 80 Ill. Adm. Code 1210.20(a), (b) (2011).[6]

---

[6]In addition, these two types of petitions are processed by the Board in significantly different ways. For example, different showings of interest are required for these different petitions, under both the Act and the Board's rules. See 5 ILCS 315/9(a)(1), (a-5) (West 2010); 80 Ill. Adm. Code 1210.80 (2011). The Board has also set forth separate qualifications for the showing of interest in election and in majority interest cases. See 80 Ill. Adm. Code 1210.80(d). There are also different procedures for processing these two types of petitions, including different time limitations as well

Thus, the Board's rules explicitly prohibit the use of a majority interest petition when the employees in the petitioned-for unit are already represented. Here, the Board determined that PCOs and ACOs are in a unit "in which another labor organization is recognized." Unit II is represented by Local 21 and Local 73, acting together as a single joint representative known as the "Unit II coalition." Therefore, Local 21 was not permitted to file a majority interest petition. In addition, there is no evidence that Local 21 sought to amend its petition or to file a new election petition to conform to the Board's rules. Local 21's choice to pursue representation without election was a procedural nullity under the Act and Rules. Accordingly, it was not clearly erroneous for the Board to conclude that Local 21 could not achieve severance with a majority interest petition.

¶ 41                    2. Failure to Satisfy the Board's Severance Standards

¶ 42    Notwithstanding, Local 21 asserts that it adduced sufficient evidence to satisfy the Board's two-part severance test, and that the Board erred in concluding that there was no reasonable cause to believe that a question of representation existed even if the petition had been filed in proper form.

¶ 43    Local 21 alleges that the Board reached this result by ignoring numerous facts which would have satisfied the severance standard. In addition, Local 21 further argues that although the Board has previously found on repeated occasions that segments of Unit II could not be severed, that precedent is not controlling because of the recent "changed circumstances" in Unit II as highlighted by the course of negotiations for the collective bargaining agreement. We disagree.

¶ 44    The Board determined that Local 21 could not meet its long-established two-part test for severance.[7] Under this standard, the group of employees petitioning for severance must: (1) share a significant and distinct community of interest; and (2) must have had conflicts with other segments of the existing bargaining unit or a record of ineffective and unresponsive representation of the interests by the existing unit's bargaining agent. *City of Chicago* (*Bridge Tenders*), 2 PERI ¶ 3022; see also *County of St. Clair*, 18 PERI ¶ 2015 (ILRB State

---

as in the information provided to employees. See 80 Ill. Adm. Code 1210.100.

    [7]Local 21 argues that instead of its traditional severance test, the Board should adopt a different test based upon a decision rendered by the National Labor Relations Board (NLRB). According to Local 21, when a petition is filed by members of a joint representative seeking to sever employees from a unit they jointly represent, severance should be granted "if the union (1) refused to participate in joint bargaining and (2) the severed classifications form an appropriate unit." See *220 Television, Inc.*, 172 N.L.R.B. 1304 (1968).
    Local 21 has waived this contention. Arguments not raised before an agency are waived for purposes of administrative review. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97 (2002). In its brief to the Board in support of its exceptions, Local 21 cited the *220 Television* case in a two-sentence footnote to point out that the NLRB used a severance standard different from that employed by the Board. However, Local 21 made no argument–as it does here–that the Board should adopt that approach.

Panel 2002). This court has observed that "the Board has traditionally disfavored severance of employees from existing bargaining units because of the policy against disrupting existing stable bargaining relationships." (Internal quotation marks omitted.) *Illinois Council of Police,* 387 Ill. App. 3d at 664.

¶ 45 In order to satisfy the first prong of this test, Local 21 was required to establish that the group of PCOs and ACOs is "so distinct, homogeneous and singular so as to have a separate identity and community of interest from the employees in the already existing larger bargaining unit." *Id.* at 666. Local 21 misapprehends the nature of this inquiry by focusing its argument on its assertion that PCOs and ACOs share a community of interest among themselves. However, the fact that employees in a proposed new unit share certain traits does not satisfy the first prong of the severance standard "where those same members 'share a broad-based functional purpose and have common employment conditions and benefits' with the members of the already existing bargaining unit." *Id.* Thus, Local 21 must not only show a community of interest among PCOs and ACOs, but that community of interest must be apart from the employees in Unit II.

¶ 46 Local 21 asserts that both PCOs and ACOs work for the City's Office of Emergency Management and Communications (OEMC), and their work is similar: PCOs take 911 calls from the public and ACOs take emergency calls at O'Hare and Midway airports. The fact that these classifications take emergency calls, however, appears to be the only commonality between PCOs and ACOs that distinguishes them from the other employees in Unit II. Indeed, Local 21 acknowledges that PCOs and ACOs work at different locations: PCOs work at the OEMC facility, while ACOs work at one of the two area airports. See also *City of Chicago*, 16 PERI ¶ 3016 (ILLRB 2000) (ALJ decision) (hereinafter *City of Chicago* (*Unit II Coalition*)) (discussing details of PCO and ACO positions, including hours, uniforms, training and supervision). From their separate locations, PCOs dispatch calls to police officers city-wide, whereas ACOs dispatch calls to Aviation Security Officers at the airports (another title represented within Unit II) and other airport security officers. *Id*. Further, Local 21 makes no claim that these three classifications have regular contact with each other, and does not dispute the City's assertion that ACOs have regular daily contact with Unit II Aviation Security Officers and Traffic Control Aide titles who work in the same department as PCOs. Thus, rather than having a significant community of interest separate and apart from the rest of Unit II, it appears that ACOs and PCOs share significant commonalities with the rest of Unit II, including "centralized personnel administration, common conditions and benefits, and–the hallmark of Unit II–responsibility for dealing with the public in a law enforcement-related capacity." *City of Chicago*, 2 PERI ¶ 3015, at IX-61 (ILLRB 1986) (hereinafter *City of Chicago* (*Security Guards*)).

¶ 47 We further note the extensive Board precedent which has consistently rejected attempts to sever subset employee groups out of Unit II, finding that these groups did not meet the first prong of its severance standard. See, *e.g.*, *City of Chicago* (*Unit II Coalition*), 16 PERI ¶ 3016 (ILLRB 2000) (rejecting petition to hold election among a subset of Unit II employees); *City of Chicago* (*Aviation Security Officers*), 9 PERI ¶ 3008 (ILLRB 1993) (dismissing petition seeking to sever aviation security officers); *City of Chicago* (*Security Guards*), 2 PERI ¶ 3015 (ILLRB 1986) (refusing to sever security guards); *City of Chicago*,

-11-

2 PERI ¶ 3009 (ILLRB 1986) (hereinafter *City of Chicago* (*Animal Control Officers*)) rejecting decertification petition seeking to sever animal control officers); see also *City of Chicago*, 18 PERI ¶ 3020 (ILRB Local Panel 2002) (rejecting unfair labor practice charge based on PCO's inclusion in Unit II because that unit is the appropriate unit for them).[8]

¶ 48    Local 21 presented no evidence that either the composition of Unit II or the nature of the employees' functions have changed since these cases were decided which would warrant that the appropriateness of Unit II should be reconsidered. Local 21 has therefore failed to demonstrate that the employees it wants severed from Unit II have the kind of separate and distinct community of interest that justifies forming a separate unit.

¶ 49    The Board also did not err in finding that Local 21 cannot also satisfy the second prong of the severance test, which requires a showing that "the employees seeking severance have had dominant interests that are incompatible with the interests of the larger unit and, as such, have conflicts with other segments of the existing bargaining unit, or that the existing bargaining representative has a record of ineffective and unresponsive representation of their peculiar interests." *Illinois Council of Police*, 387 Ill. App. 3d at 667.

¶ 50    Although Local 21 asserts that the group of PCOs and ACOs are "disproportionately-sized" with respect to the rest of Unit II and that their interests "were subordinated" to the majority during the summer 2009 negotiations on the collective bargaining agreement, these contentions are insufficient to satisfy the second prong of the severance standard. That test requires consideration of "the effectiveness as part of the history of the severance group's representation in the larger unit" (*Bridge Tenders*, 2 PERI ¶ 3022), and the ineffectiveness of that representation must be "obvious, long-standing and directed exclusively at the employees to be severed." *County of Rock Island & Sheriff of Rock Island County*, 7 PERI ¶ 2040, at X-195 (ILLRB 1991) (hereinafter *County of Rock Island* (*Correctional Officers*)).

¶ 51    *Bridge Tenders* s the only case in which the Board found the second prong to have been met, on the basis that "significant representation of bridgetenders ha[d] been nonexistent in the existing unit" for decades. *Bridge Tenders*, 2 PERI ¶ 3022, at IX-110. The Board noted that the union had failed to file any grievances on behalf of the bridge tenders, consult with employees for collective bargaining, provide a union steward, or grant employees regular union membership. Local 21 asserts no similar facts here. Indeed, since rendering its decision in *Bridge Tenders*, "the Board has asserted that the fact pattern [there] *** is 'the litmus test to determine if a union has failed to represent a group of employees for purposes of severance from an existing unit,' and has refused to find that the second prong of the traditional severance standard has been satisfied where the failure to provide representation does not mirror that of [*Bridge Tenders*]." *Illinois Council of Police*, 387 Ill. App. 3d at 668;

---

[8]The Board has also repeatedly ruled that public safety employees are properly included in Unit II when the Unit II coalition has petitioned to represent them. See, *e.g.*, *City of Chicago*, 11 PERI ¶ 3024 (ILLRB 1995) (hereinafter *City of Chicago* (*Civilian Dispatchers*)) (finding Unit II appropriate and rejecting stand-alone unit for civilian dispatchers); *City of Chicago*, 2 PERI ¶ 3014 (ILLRB 1986) (hereinafter *City of Chicago* (*Detention Aides*)) (deeming Unit II appropriate and rejecting stand-alone unit for detention aides).

see also *County of Cook*, 16 PERI ¶ 3003, at XI-6 (ILLRB 1999) (hereinafter *County of Cook* (*Deputy Sheriffs*)) (characterizing *Bridge Tenders* as a case where the union had "all but abandoned" the employees).

¶ 52 Here, the record reflects that for almost the entire history they received joint representation–between 1985 and 2009–PCOs and ACOs alleged neither conflict nor inadequate representation. Local 21 claims that conflict arose near the end of the last round of negotiations regarding the collective bargaining agreement over what concessions Unit II would provide in exchange for the City's agreement not to lay off 500 Unit II employees, and that the interests of PCOs and ACOs were subordinated to those of the majority. However, an alleged conflict in the summer of 2009 during which the group's wishes may have been overridden by the majority does not meet the Board's requirement of "longstanding" conflict or ineffective representation. It is a "reasonable byproduct of the collective bargaining process that a favorable bargain for a small part of a broad-based unit may be lost in favor of a better bargain for the unit as a whole." *County of Cook* (*Deputy Sheriffs*), 16 PERI ¶ 3003, at XI (citing *Vaca v. Sipes*, 386 U.S. 171 (1967)). This describes the situation at bar.

¶ 53 Unit II faced a decision: have hundreds of its members laid off or save those jobs by making concessions in an amount equivalent to those salaries. A majority of Unit II voted to approve the amended collective bargaining agreement that exchanged layoffs for various concessions, and a more favorable bargain for PCOs, ACOs and other Unit II employees who were not slated for layoff was sacrificed for the good of the whole. Such tradeoffs are typical and reasonable in the collective bargaining process. In addition, we note that the sacrifices were not borne solely by the employees who wish to be severed; rather, they affected all employees in Unit II. In essence, Local 21 is complaining that its members and those of Local 73 were treated the same. Thus, it cannot accurately be said that the interests of the nearly 400 PCOs and ACOs were subordinated to the 1,700 other employees in Unit II. Rather, with 500 layoffs among Local 73's 1,700 employees, the other 1,200 were in exactly the same position as the PCOs and ACOs. Accordingly, members of Local 21 were not unfairly singled out to bear the burden of saving hundreds of jobs. In sum, it was not clearly erroneous for the Board to conclude that Local 21 failed to meet the second prong of the severance test.

¶ 54 In light of our disposition, we need not address the remainder of the parties' arguments.

¶ 55                                   CONCLUSION

¶ 56 For the foregoing reasons, the decision of the Board is affirmed.

¶ 57 Affirmed.